L. D. ADAMS and W. W. FUSSELL v. WM. D. BROWN.

1. CHANCERY PRACTICE. *Vendor's lien. Does not pass to assignee of notes. When.* A vendor of real estate, who has conveyed by deed, and taken notes for part payment for the purchase money, and afterwards assigns the same for value to a third party, cannot, by uniting as complainant with such assignee in a bill in equity, and therein acknowledge his liability upon his assignment, with a view of reviving his vendor's lien in favor of his assignee for the unpaid purchase money, the Court saying: "The liability upon the endorsement should be judicially ascertained before the filing of the bill by the vendor to enforce the lien. It was not intended by the opinion to authorize the institution of a suit by parties who at that time had not the right to the relief they sought.

Case cited and criticised: Green v. Demoss, 10 Hum., 371.

Adams v. Brown.

2. EQUITY OF REDEMPTION. Land was sold in February, 1861, upon a judgment of condemnation of the Circuit Court of November Term, 1860, and purchased by Massey on February 4, 1861, he and Holland having purchased it of Dotson, the judgment debtor, and taken a deed for it after the judgment, but before the sale. Before the time of redemption expired, England, the judgment creditor, redeemed of Massey, and credited his judgment in full. Sometime after the expiration of the time of redemption, Holland purchased of England, and took his order to the Sheriff for title, who made a deed to Holland, and Holland afterwards conveyed to Adams. It is insisted now, that as Massey and Holland were purchasers jointly from Dotson, that Holland redeemed from England for the joint benefit of himself and Massey, and could, by his deed, only convey his own undivided half of the land to Adams, leaving one half interest in himself as trustee for Massey.

*Held,* As the so-called redemption had not been made within two years after the sale, there is no ground for such a claim under the conveyance of Dotson.

3. SALE OF LAND. *Deficiency of quantity.* No objection for deficiency in quantity can be had where the land is not sold by the acre, the boundaries being shown the defendant, and estimated to contain—" acres more or less."

FROM HUMPHREYS.

Appeal from the Chancery Court. G. H. NIXON, Chancellor.

No briefs appear in this record.

DEADERICK, J., delivered the opinion of the Court.

Complainants filed their bill against the defendant in the Chancery Court of Humphreys County on July 28, 1871.

The bill alleges, that complainant Adams, in 1869 or 1870, sold and conveyed by deed in fee, with

general warranty of title, to defendant Brown, a tract of land in said county, containing 200 acres, more or less, for $1,000, and for the balance of the purchase money, after the payment of $600, took two notes, each for $200, which are exhibited with the bill, and are dated December 27, 1869, and were due and payable, respectively, March 27, 1871, and March 27, 1872.

It is also alleged in the bill that these notes were assigned by Adams to his co-complainant, before due, in due course of trade, for value received, and this assignment is endorsed on said notes, waiving demand and notice.

Adams admits in the bill that he is bound for the payment of said notes, and it is insisted in the bill that the notes are a lien upon the land in favor of Adams. They pray that the notes be declared a lien upon the land, and that it be sold on a credit for their payment, and without the right of redemption. And Fussell prays for a decree against Adams and Brown for the amount of the notes, and both complainants pray for a sale of the land for their payment.

Brown filed his answer and cross-bill, and admits the sale of the land and conveyance by deed to him, and the execution of the notes by him to Adams, and insists that Adams practiced a gross fraud upon him by selling and conveying land to which he had no title, and by pointing out to him land which he proposed to convey that was not included in the deed. These facts, it is alleged, were well known to Adams,

and the design of said Adams was to defraud him; that fifty acres of heavily timbered land contiguous to the railroad was shown him as part of the land sold, and was a material inducement to the purchase. This fifty acres was not included in the deed, and, in fact, did not belong to said Adams; that complainant was a stranger in the country, and relied upon Adams representations, and that he received the deed believing that it covered all the land shown him, and which Adams agreed to convey, whereas it did not include the fifty acres of timbered land, and included only about one hundred and fifty acres instead of two hundred acres, and that as to the land included in the deed, his title is defective to the extent of at least one-half, of all which facts he, respondent, was ignorant at the time of the purchase, and that Adams is wholly insolvent. It is further insisted in the answer and cross-bill, that neither complainant has any lien upon the land sold for unpaid purchase money. Brown prays that his notes be surrendered and cancelled, or that Adams cause a good title to the land agreed to be conveyed to be made, or that the contract be rescinded in whole, or an abatement of the purchase money decreed.

Complainants answered the cross-bill, Adams insisting his title was good, and that he had conveyed all the land he agreed to sell, and denying the fraud charged.

Fussell states that he bought the notes, and paid for them in good faith before their maturity, without

any knowledge or notice of any defences against them, and insists that the land should be subjected to their payment.

The first question presented arises upon the original bill, which is filed by complainants' to enforce the vendor's lien for the payment of the two notes remaining due, each for $200.

The theory of the bill is, that complainant Fussell is entitled to a decree against his co-complainant Adams, upon his endorsement to him of said two notes, and also against defendant Brown, and upon Adams being thus made liable upon his endorsement, the lien in his favor, suspended by his assignment of the purchase money notes, would be revived, and become operative in favor of his assignee. In other words, that the vendor, who has conveyed by deed, and taken notes for part payment of the purchase money, which he afterwards assigned for value to a third party, may, by uniting as a complainant with such assignee in a bill in equity, and therein acknowledging his liability upon his assignment, still enforce his vendor's lien for such unpaid purchase money.

And this theory, it is assumed, is sustained by the case of *Green* v. *Demoss*, 10 Hum., 371, where the vendor sold and conveyed the land, and took the vendee's notes for the purchase money, and assigned part of the notes.

The vendee in that case afterwards conveyed the land to a trustee to secure creditors, and the vendor and his assignees united in a bill to enforce the vendor's

lien for the payment of the notes as against the vendee and the trust creditors.

The bill was taken for confessed as against the vendee, and resisted by the trustee.

The Court held, that the vendor's lien " does not pass to the assignee of the vendee's obligation for the consideration money, and, consequently, cannot be enforced in his favor." " But if the vendor be made liable upon his endorsement, or voluntarily takes back the note, the lien will be regarded as merely suspended, in the meantime, and he will be remitted to his original right to enforce the lien against his vendee."

The relief prayed was denied the assignees, because no lien passed to them by the assignment of the notes, and it was refused to the vendor because it did not appear that he had been made liable on his endorsement of the notes, or had taken them back.

We think it obvious, from the language of the opinion in the case cited, that the liability upon the endorsement should be judicially ascertained before the filing of the bill by the vendor to enforce the lien. It was not intended by the opinion to authorize the institution of a suit by parties who at that time had not the right to the relief they sought.

A complainant can only recover upon the case made in his bill. He must allege such facts as show a right existing at the time of the filing of the bill to relief.

Neither complainant, at the time of the filing of

the bill, was entitled to the benefit of a vendor's lien. Adams, by his assignment of the notes, had lost it, and his assignee had not thereby acquired it.

We are of opinion, therefore, that the decree of the Chancellor, declaring that Adams had a lien upon said land, by reason of the judgment of the Chancellor in said decree that Adams was liable on his assignment to Fussell, was erroneous, and that in this aspect of the case, Fussell is not entitled to the relief specifically prayed for in his bill. But the bill alleges the assignment of the notes by Adams in due course of trade, and that the land is liable to be sold for their satisfaction; that defendant is insolvent, and has no means to pay said notes, except the tract of land conveyed to him by Adams; and contains a prayer against Adams and Brown in favor of Fussell on the notes, and for general relief.

There is no demurrer to the bill, but an answer, which admits the execution of the notes, and the insolvency of respondent, and the evidence sustains the allegations that the notes were taken, and assigned to Fussell for a sufficient consideration, before due, and without any notice of any defences to the same. A decree was rendered in favor of Fussell against Adams and Brown for the amount of the notes, from which Adams has not appealed, and while complainant Fussell, having no lien on the land, is not entitled to a decree for its sale, there being no demurrer to the bill, he is entitled to a decree for the amount of the notes and interest, for which he may run his execution.

The cross-bill alleges that Adams sold land to Brown, not included in his deed. 2d. That he fraudulently represented that the tract contained two hundred acres, when, in fact, it contained but about one hundred and fifty acres. 3d. That he had no title to half of the tract actually conveyed.

Upon the first proposition, defendant testifies that the complainants, Adams, Evans and himself, looked at the land, and traced the lines, until they came to a sycamore tree at the mouth of a hollow, on the bank of a creek, and that Adams told him "that he sold the undivided half of one hundred acres," known as the Bagwell tract, south of Hurricane creek.

On the other hand, Adams testifies that he did not sell or offer to sell defendant any part of said Bagwell tract; that he did not own it, and it belonged to Evans, and not to him, and that he sold only the two hundred acres, more or less, conveyed to him by Holland.

Several witnesses speak of declarations by Adams tending to show he had sold fifty acres of timbered land, which he said he got of Holland, and which was on the south of the creek. But Evans, the owner of this one hundred acres, was present with Brown and Adams, when they went around the lines of the tract sold.

Evans is dead, but it is highly improbable that Adams would point out to Brown, in presence of Evans, land as belonging to himself, which he and Evans knew belonged to the latter.

J. M. McAdoo states that he surveyed the land and

found the lines and corners plainly marked, the tract containing about one hundred and seventy acres; that he wrote the deed from Adams to Brown from a deed from Holland to Adams; that he read the deed to Adams in the presence of both Adams and Brown, and after he had written the deed to Brown from Adams, that was read to both, and seemed to be satisfactory to both, and nothing was said about any land being sold south of Hurricane creek by Brown or Adams; that he called the attention of both to the imperfect description given of the land in the deed, which contains only a covenant of warranty of title.

We do not think that there is sufficient evidence of an intention on the part of Adams to practice a fraud upon Brown, or that he did, in fact, represent any part of the one hundred acres on the south side of the creek as being included in the deed. In addition to the improbability of such representation being made in the presence of Evans, who owned the land, when he and Adams were showing the lines to Brown, it is not at all likely that the subject would not have been mentioned in the presence of McAdoo, who twice read, in the hearing of both parties, the boundaries of the land, and commented upon their indefiniteness.

The few loose declarations proved to have been made by Adams, who is shown to have been an habitual drunkard, are not of sufficient weight to authorize us to disregard well established and admitted facts in the record.

The next objection, that there is a deficit in the quantity of land, is equally untenable.

The land is not sold by the acre, the boundaries were shown to defendant, and it was estimated in the deed to Brown, as in the deed to Adams, to contain " two hundred acres more or less."

It is again objected, that the contract of sale should be rescinded because one Massey was a tenant in common with Holland at the time of his conveyance to Adams, and that said conveyance, of course, was inoperative as to the interest of Massey.

The land in controversy was sold in February, 1861, upon a judgment of condemnation of the Circuit Court of November Term, 1860, and purchased by Massey on February 4, 1861, he and Holland having purchased it of Dotson, the judgment debtor, and taken a deed for it after the judgment, but before the sale. Before the time of redemption expired, England, the judgment creditor, redeemed of Massey, and credited his judgment in full. Sometime after the expiration of the time of redemption, Holland purchased of England, and took his order to the Sheriff for title, who made a deed to Holland, and Holland afterwards conveyed to Adams.

It is insisted now, that as Massey and Holland were purchasers jointly from Dotson, that Holland redeemed from England for the joint benefit of himself and Massey, and could, by his deed, only convey his own undivided half of the land to Adams, leaving one half interest in himself as trustee for Massey.

If the so-called redemption had been made within two years after the sale, as claimants of the right under the conveyance of Dotson, there would be some ground for the claims. But neither Dotson nor his creditors, nor his assignees, had any right to redeem from England at the time he ordered the conveyance to be made to Holland. It does not appear that Holland acted for Massey, or that Massey advanced any part of the money, or was in anywise concerned or interested in the transaction. Neither of them had any interest or claim upon the land. England's title was complete and perfect, and he might convey or refuse to convey at his option, and although Holland spoke of having to pay England, so as to hold his land under Dotson's deed, he took the title in his own name, and sold and conveyed the land as his own, and there is nothing to show that Massey was in any way interested in the purchase from England, which was made long after the equity of redemption was barred.

We are, therefore, of opinion, that Holland acquired the title, free from any equitable interest in Massey, and by his deed communicated a good title to Adams.

The cross-bill will be dismissed, and a decree will be rendered here in favor of Fussell against Brown and Adams for the amount due upon said notes, and to this extent the Chancellor's decree will be affirmed. But instead of ordering a sale of the land, an execution will be awarded, and in this respect the Chancellor's decree is modified.

Complainants and the defendants will pay one-half of the costs of the causes in this Court and in the Chancery Court.