## JENNIE GRATZ MILLER v. JENNIE GRATZ, et al.

Eastern Section. August 7, 1926.

Certiorari denied by Supreme Court, December 11, 1926.

1. **Evidence. Family history. Non-existence of children may be established by one knowing the family history.**

In an action to recover property under a will as the next of kin of deceased, where it was sought to show that he had two children living, held that the statement of one familiar with the family and the family history that there was no family history showing the existence of these two purported children was competent to establish the non-existence of children.

2. **Evidence. Records of a divorce case held not evidence of the existence of children.**

Where the records of a divorce case were introduced but the records did not show that there had been children born of the marriage, held not evidence to show that there were no children born to this union.

3. **Evidence. Family history. Statements to prove family history must be made by party actually knowing the family.**

Where the affidavit of heir of deceased was introduced showing that deceased left as heirs two children and it was shown that the party making the affidavit made it solely from hearsay and not from actual knowledge that he had of the family, held the same was inadmissible to prove the existence of children of the deceased.

4. **Wills. Wording of will construed.**

Where a will provided "I further declare as my wish that all property cash etc., which I leave to my wife in this my last will," held, to be construed to include all property and should be read as with a comma after the word "property" and after the word "cash," making the clause read "all my property, cash, etc."

5. **Wills. Estates. Party given an unlimited Power of disposition takes fee.**

The devisee takes property absolutely when given an unqualified right of disposal, and such terms "to do with at pleasure," "to do with at discretion," "to use and enjoy at pleasure," denote such an intention on the part of the testator.

6. **Life estates. Life tenant buying property at foreclosure sale holds the same for the benefit of remaindermen.**

Where a life tenant permitted land to be sold under a mortgage and bought the same, held that she held it for the benefit of remaindermen subject to being reimbursed for the amount expended.

7. **Life Tenant. Where life tenant purposely defaults in payment of deed of trust and permits the property to be sold and buys it in, held the remaindermen are not required to contribute to the amount paid above encumbrance.**

Where a life tenant purposely permitted land to be sold under a deed of trust and bought the same in to avoid administration of the estate of deceased in Tennessee, and at the sale she paid an amount greater than the amount of the deed of trust, held that although ordinarily the remaindermen would be required to contribute the amount paid above the encumbrance, yet in this instance the court does not require them to contribute.

8. **Limitation of actions. Statute of limitation does not run against remaindermen until termination of life estate.**

The statute of limitation does not start to run against remaindermen until the falling in of the life estate and it is presumed that anyone holding under the life tenant is not holding adversely to the remaindermen.

Appeal from Chancery Court, Knox County; Hon. Chas. Hays Brown Chancellor.

Modified and affirmed.

Lawrence & Lawrence, of Knoxville, for appellant.

Testerman & Burnett, of Knoxville, for appellee.

PORTRUM, J.   This lawsuit involves the construction of the will of Joseph S. Gratz, who died in Cook county, Illinois, in the year 1903, owing certain real estate located on Broad & Church streets in Knoxville, Tennessee, which was encumbered at the time of his death by a trust deed securing a note of J. S. Gratz for the sum of $2000, which note was made payable to the bene-

ficiary in the trust deed, Lee McClung, the trustee named in the deed being John W. Green, of Knoxville.

The estate of Joseph S. Gratz was administered in the county court of Waukesha county, State of Wisconsin, where Minnie Obermeyer was appointed administrator of the estate with the will annexed.

Joseph S. Gratz left his wife, Augusta M. Gratz surviving, who was the principal beneficiary under the terms of the will, it being conceded that she took a one-half undivided interest in the real estate located in Tennessee, because she was given an unlimited power of disposition as to a one-half undivided interest. But it is insisted that she took only a life estate in a moiety of the property, the remaining interest in this moiety going, upon her death, to the nearest living relative of her deceased husband, J. S. Gratz. The complainant represents herself to be that nearest living relative, and, since Augusta M. Gratz died in the year 1923, then the complainant is the owner of a one-half undivided interest in the property, and is entitled to possession or a partition of the property.

The defendant, E. A. Gymes, claims to be the owner in fee of the aforesaid property, claiming through a chain of title based upon a deed to him from A. G. Kyle, who in turn acquired the property from a sister of Mrs. Augusta M. Gratz, namely, Bertha Scherf, and that she in turn acquired the property through a deed from her sister, Augusta M. Gratz, and Augusta M. Gratz, widow of Joseph S. Gratz, claimed the fee in the property by reason of a trustee's deed executed by John W. Green in a foreclosure proceeding under the deed of trust executed by her husband, Joseph S. Gratz, to secure the note aforesaid of $2000 to Lee McClung. It being shown that said trust deed provided that in default in the payment of interest before the maturity of the note, then the principal obligation should become immediately due, authorizing the foreclosure of the trust deed, and the said Augusta M. Gratz, life tenant of a one-half undivided interest, as insisted, declined to pay the interest when due, and permitted the acceleration of the maturity of the note, and a foreclosure under the trust deed, when she became the purchaser of the property at the sum of $3500, paying in cash $2128, the principal, interest and attorney's fees due on the note, and the balance of $1372 being secured by a vendor's lien in the interest of the trustee. This last balance was receipted as paid by the trustee and released on the record, Mrs. Augusta M. Gratz, presenting an order or decree of the county court of Waukesha county, Wisconsin, adjudging that she is entitled to said fund or judgment for such amount as a part of her allowance as a

widow, and also in repayment of certain debts paid by her due from the estate of her husband.

Mrs. Augusta M. Gratz never dissented from the will of her husband. The complainant insists that she acquired no title, or what title she did acquire under the deed from the trustee, John W. Green to her at the foreclosure proceeding, inured to the benefit of the complainant. That is, that it is the duty of a life tenant to pay all interest accruing under an incumbrance resting upon the estate, and when the life tenant violates this duty and procures a foreclosure, or does not prevent a foreclosure, but becomes a purchaser of the property at the foreclosure proceeding, then she holds the estate in the same manner as before the foreclosure, except possibly having the additional right to require the remainderman to reimburse her for the fund expended in the protection of the estate to the extent of the remainderman's interest protected.

The defendants defend upon the further ground that the complainant has not established that she is in fact the nearest living relative entitled to take the property under the terms of the will of Joseph S. Gratz, averring that Mr. Gratz left in the Empire of Germany two living children, a son and a daughter. This defense will be disposed of first.

The Chancellor found as a fact that Jennie Gratz Miller, the complainant, is a sister and the nearest relation of Joseph S. Gratz, deceased, who was living at the date of the death of the wife of Joseph S. Gratz, namely, Augusta M. Gratz. We have the testimony of the complainant, Jennie Gratz Miller, that she is a sister of Joseph S. Gratz, and that she was associated with him during the greater part of their lives and was in a position to know the family history. It appears that the Gratz children were orphaned in Germany prior to the Civil War, and that they were scattered among different relatives. An older brother, L. A. Gratz, first came to America and served as a major in the Civil War on the side of the Union. He later moved to the city of Knoxville and was a distinguished lawyer there until his death. The complainant left Germany when a young girl and came to America about the close of the Civil War. Her brother, Jos. S. Gratz came to America about the year 1872, and after spending a few years in the west also came to Knoxville, where his brother and the complainant were located, and lived there for several years in intimate family relationship with the complainant and his brother. He married in the city of Knoxville, but it appears his family and his wife were not very congenial and after a few years he moved to the city of Chicago. During all of this association the complainant, Mrs. Jennie Gratz Miller, states that she never heard of the existence of any children of her brother, J. S. Gratz. When she learned of the

claims of the defendants that a son and daughter were born to Joseph S. Gratz in Germany, and who resided in Zielenzig about the year 1872, she undertook to locate said children, as we believe for the purpose of substituting them for herself in this lawsuit, as we gather from the following letter.

"Knoxville, Tenn., May 19/25.

"Mr. Mack Gratz
        &amp;
"Miss Jennie Gratz,
"Zielenzig, Germany.
"Dear Sir & Madam:—

"Are you the children of Jos. S. Gratz now deceased, who formerly lived in Chicago, Ill., U. S. A., and if so, what proof can you furnish regarding same.

"Has a settlement been made with you, which is customary in Foreign Countries, and what legal proceedings took place?

"Please let me have an answer to this letter at once, and after receiving same, I will explain to you in detail the reason I request this information.

"If you are the children of J. S. Gratz you are my brother's children.

"Thanking you for an early reply, I am

"Yours truly,

"Mrs. Jennie Gratz Miller."

This letter was returned with the notations, written in German, presumably by the authorities, which when translated show that the authorities are unable to locate the parties in that city.

Mrs. Miller has affirmatively established by her testimony that no family history existed of the existence of these two purported children of Joseph S. Gratz, and she established the fact that she knew the family history. This character of evidence is competent to establish the non-existence of children of a particular person.

"The bill of exceptions states that this witness 'testified, against the tenant's objection, after the court ruled that her testimony was admissible for that purpose, and to which ruling the tenant excepted, that Jacob Ayer left no issue, and on cross-examination stated that she never heard that he was twice married, and never heard that the first wife of Jacob Ayer ever had any children.' The witness was clearly a member of the family and interested to know its connections and relationships, and competent to testify as to general repute in it as to matters of pedigree. This justified the ruling to which exception was taken." Butrick v. Tilton, 155 Mass., 461.

The witness qualified under the rule as laid down by Mr. Justice McLean in the case of Stein v. Bowman, 13 Peters (U. S.), 209, where he said:

"It is not every statement or tradition in the family that can be admitted in evidence. The tradition must be from persons having such connection with the party to whom it relates, that it is natural and likely, from their domestic habits and connections, that they are speaking the truth, and that they could not be mistaken. 1 Philips, 174; 2 Dallas, 116."

The defendants, evidently discovering other evidence of the existence of two children among the papers which came to them through their chain of title from Augusta M. Gratz, introduced, first, a certified copy of a divorce proceeding filed by Joseph Gratz against Joanna Gratz in the Territory of Utah, Beaver county and probate court, which case was tried on the 4th day of April, 1876; and it being alleged in the petition that the plaintiff and defendant were married in Zielenzig, Germany on the 29th of November, 1866; that the plaintiff wishes to become a resident of Beaver county, Utah, but is so situated that he cannot at present carry his desire into effect; that the plaintiff and defendant cannot live in peace and unity together and their welfare requires a separation, and that defendant has for more than four years past wilfully deserted and refused to come and live with him, although frequently requested to do so, and there is no prospects of their ever living together again; plaintiff prays judgment for a divorce. Signed and sworn to by Joseph Gratz. Publication was made and default judgment taken against the defendant. A divorce was granted the plaintiff. This record was duly certified on the 17th day of December, 1925. No reference is made in the proceeding to any children born to the union, and no proof is introduced identifying the plaintiff as the same Joseph Gratz referred to in the present proceeding. But giving such evidence such weight as it is entitled, had the plaintiff been duly identified, it cast no evidence upon the existence of any children born to this union.

The defendants next introduced a certified copy of the proceedings in the probate court of the county of Waukesha, State of Wisconsin, wherein a petition was filed by the administrator of Joseph S. Gratz containing the following averment:

"That said deceased left him surviving as his next of kin and heirs at law the following named persons, to-wit: Augusta M. Gratz, resident at Menomonee Falls, and being widow of deceased; Max Gratz, residing at Zielenzig, Germany, and being son of the deceased; Jennie Gratz, residing at Zielenzig, Germany, and being daughter of the deceased."

This petition was filed by Augusta M. Gratz on the 30th day of January, 1905.

The husband, Joseph S. Gratz, having died in the year 1903, and at the time of his death his widow, Augusta M. Gratz was ignorant of the existence of any children, as appears from the record, she

having made application to an insurance company to collect the insurance she thought was made payable ,to her, when she was informed by a letter from the insurance company that the certificate was made payable to her and the two above-named children of her deceased husband. A letter from her representative in Chicago was received by her in April, 1904, or a year after the death of her husband, and it reads as follows:

"April 23, 1904.

"Mrs. J. S. Gratz,

"PewWaukee, Wis.

"Dear Madam:—

"We herewith enclose you another letter which we have received today. There is something in it which we do not understand and did not know before, as we did not know that Mr. Gratz had children, but as it appears, the matter will have to go into the probate court and will be a more expensive matter than we thought and the services of a competent lawyer will be required, so you had better come to Chicago. Yours truly, A. Hirsch & Co."

Mrs. Augusta M. Gratz received the following letter from the insurance company in New York:

"Dear Madam:—

"I beg to return you herewith proof of death in the case of Joseph S. Gratz, deceased, the claimant certificate being signed by yourself only, whereas the books of the league show that you are entitled to three-fifths, and that Jessie Gratz, Daughter of the deceased is entitled to one-fifth, and Max Gratz, his son, one-fifth of the benefit moneys.

"The claimant certificate should be made out to conform to the interest of the respective parties, as above stated. An affidavit should also be furnished giving the residence and ages of Jennie and Max Gratz.

"When this is done kindly return all papers to me."

After these letters were received by Mrs. Gratz the petition above referred to was filed by her alleging the existence of the two children. She could not possibly know of her own knowledge of the existence of the children, who, if living, lived in Germany, and her knowledge therefore would have been confined to the declarations of her husband, if he made any. There is nothing to indicate that he ever told her of their existence, and the facts show that she thought at the death of her husband he did not have children surviving; or at any rate there is nothing in the record establishing the fact that she at the death of her husband believed or asserted that he had children surviving him. The allegations in the above-mentioned petition are not evidence except as declarations of

family history. We do not think they are competent, for the reason that it is not established that the declarant, who had no personal knowledge, ever heard any member of the family, who in law was supposed to know, make a like declaration. We think the allegation was based upon the information contained in the aforesaid letters. Evidence of this character is always received with caution, giving to it such weight only as the character of the evidence shows it is entitled to. Jones on Evidence, section 317.

And it is further shown that the aforesaid declarations of the existence of said children may, or could have been made, for the purpose of lulling to sleep the relatives in America while the widow appropriated the fee in the property under the foreclosure proceeding above referred to, and which at the time had been instituted; that is, the declarations in the petition are not shown by the record to be disinterested declarations.

The letter above quoted from the insurance agent was also introduced as evidence, but it is not shown that the writer was dead, nor that he was a member of the Gratz family, nor that the original register referred to in the letter, which was the primary evidence, was not in existence. It is not shown what disposition was ever made of the insurance money going to the two children, or any attempt made to produce the primary evidence above referred to. The letters do not in fact qualify under the rule in the establishment of pedigree by hearsay. Jones on Evidence, Chapter 10. But the evidence has been considered for what it is worth. The complainant below excepted to the evidence, but failed to keep alive his exceptions, and is in no position to insist upon its exclusion.

Viewing the evidence as a whole, we give the greater weight to that of the complainant, and concur in the findings of fact, by the Chancellor, that Jennie Gratz Miller was the nearest living relative.

## II.

Having established the right of the complainant to maintain this action, the next question which presents itself is, the construction of the 4th paragraph of the will of J. S. Gratz, which reads as follows:

"Chicago..............1892.

"My last Will & Testament.

"1/ I herewith leave all my real estate and personal property to my wife Augusta M. Gratz.

"2/ I request my wife Augusta M. Gratz to pay all my just debts.

"3/ All my insurance in the Northwestern Traveling Man Assn. Travelers League of New York Mutial Life or N. Y. In-

depend Order of B. B. Soverenaty Lodg of Chicago belong to my wife as stated in the policies of the same.

"4. I further declare as my wish that all Property Cash etc which I leave to my wife in this my lat Will, should be dividet by my wife Augusta M. Gratz before her death in such a way as she should see proper so that after her death the propertee should be dividet that one half should bee left to my nearest relation and the other half to any one or ones my wife may choose. I wrote this my last Will by full power of Sence and on this day of our Lord May the 30th 1892.

"J. S. Gratz."
"Chicago, Ills.

```
           (  F. Goldberger
           (
"As Witnesses  ( .
           (
           (  Louis Cohn."
```

The Chancellor, in his finding of fact, placed a comma after the word "property" and the word "cash," making the clause read "all my property, cash, etc." The defendants complain at the placing of these commas, insisting that the testator intended the words "property cash" to designate cash only. We are not impressed with this contention, for the reason that in the former part of his will he made no reference to any "property cash," and further the word "all," appearing immediately before the word "property," would indicate that he meant to include more than one species of property. We think the construction of this clause is properly expressed by the placing of commas after the word property and after the word cash, and the word "etc.," meant to, and including the words preceding it, carried the whole estate of the testator except the insurance money, which was stated in the will to belong to the wife because so provided for in the policies. And by the way, this provision in the will is a contradiction by the testator of the register of the insurance company, which purports to show that one of the policies was made payable to the wife and two children, and therefore weakens, if not destroys, the evidence relied upon to establish the existence of the two children.

We are further of the opinion that the Chancellor was correct in adjudging that Augusta M. Gratz took a one-half undivided interest in the fee to the real estate, because she was given an unlimited power of disposition, the will reading—"the other half to any one or ones my wife may choose." This clause likewise indicates an intention to deny the right of the wife to dispose of the other one-half interest, her power with reference to that moiety being her right to make partition of the property prior to her

death. That is, she may have given his nearest relative property of one species, so long as it was equal in value, and retained or disposed of property of another species. But since he died owning only the real estate no attempt to partition was made, and the wife took under the will only a one-half undivided interest in the real estate, and upon her death the party representing the nearest relation of the testator became vested with the absolute interest in one-half of the estate.

The devisee takes property absolutely when given an unqualified right of disposal, and such terms as "to do with at pleasure," "to do with at discretion," "to use and enjoy at pleasure," denote such an intention on the part of the testator. Ogilvie v. Wright, 140 Tenn., 114. The language of the will clearly gives the widow a right to dispose of one-half as she chooses, but there is nothing in the will to indicate, except the first sentence of the will, that she had any right to the other half whatever except a life estate, and the further right to divide the estate prior to her death. The first sentence, which gives the whole estate to the wife, was clearly cut down and restricted by the fourth paragraph. A provision of like import was construed in the will of Thomas E. Daly, and was held to have been cut down and restricted, and in the case involving the Daly will the court exhaustively reviewed the authorities in reference to precatory trust. Daly v. Daly, 142 Tenn., 242.

We are of opinion that the wife had no power of disposition in reference to the moiety going to the testator's nearest relation. Her right was restricted solely to a life estate in this moiety, with the further right of partitioning the estate during her life. There was no error in the action of the Chancellor in so decreeing.

### III.

It is next assigned as error the action of the Chancellor in decreeing that the life tenant's purchase of the estate at the trustee's foreclosure sale inured to the benefit of the remainderman; it being insisted that the life tenant had a right to purchase the property in fee to the exclusion of the remainderman.

As stated above Mrs. Gratz allowed the interest on the mortgage indebtedness to default, and under the terms of the trust deed the whole debt matured and was foreclosed, when she became the purchaser at the price of $3500, the debt, interest and cost aggregating only $2128. We think when she purchased and acquired the outstanding title it inured to the benefit of the remainderman, subject to reimbursement of the life tenant to the amount of the remainderman's interest. See:

Second Minor on Real Property, Vol. 1, page 254, section 217.

"If property comes to the life tenant already subjected to a mortgage or other incumbrance, it is the duty of the life tenant to pay the interest annually accruing on the debt so secured until it is paid off—throughout his whole life, if the incumbrance does not mature sooner. If he fails to do so, he is liable to the reversioner or remainderman for any loss that may result. But if the debt falls due and the incumbrance is foreclosed in the tenant's lifetime, as between himself and the reversioner or remainderman, he is not bound to pay the whole principal, but only so much thereof as would correspond to the aggregate of all the annual payments of interest, that would accrue were he to continue paying the same during his life, reduced to cash calculated at compound interest; the duration of the tenant's life being computed according to approved mortality tables, making due allowance for the peculiar conditions of each case."

21 C. J., page 942, section 74.

"But neither a life tenant nor one claiming under him, who allows the property to be sold for taxes or the satisfaction of an encumbrance, or the interest thereon can acquire a title adverse to the remainderman or reversioner by purchasing at the sale himself, or through an intermediary, or by obtaining a conveyance of the title acquired by another purchaser to a payment or redemption which it was the duty of the life tenant to make. The disability which attaches to a life tenant to assert a tax title against his remainderman also attaches to his wife. If the life tenant purchases an outstanding title or encumbrance, or purchases the property at a sale to satisfy an encumbrance, he cannot hold such title, encumbrance or property for his exclusive benefit, but will be deemed to have made the purchase for the benefit of himself and the remainderman or reversioner, in case the latter will contribute his share of the sum paid by the life tenant, and does so within a reasonable time. If the life tenant pays more than his proportionate share, he simply becomes a creditor of the estate for that amount."

In the case of Upton v. Merriman, 116 Minn., 339, Ann. Cas., 1913B, page 494, Simpson, J., uses the following language:

"The rule is that a life tenant, in possession of property subject to mortgage, must keep down the interest accruing on such mortgage, and if he purchases an incumbrance upon or adverse title to the estate he will be regarded as having made the purchase for the joint benefit of himself and the remainderman, on condition that the latter contribute his share of the

sum paid. In this case Charles H. Upton held the life estate in the premises. Under the general rule his purchase of the title derived through a foreclosure of the mortgage on the premises is deemed to have been made for the joint benefit of himself and the owners of the remainder or fee. The particular facts in this case emphasize the duty of the life tenant not to impair, by his acts, the estate in remainder. The owners of the remainder were the children of the life tenant. It had been the understanding in the Upton family that the premises should, after the death of the parents, go to the daughter Mabel. It appears that that understanding existed when the parents placed on the premises the mortgage afterwards foreclosed. The circumstances of the foreclosure, together with the subsequent circumstances of the execution by Charles H. Upton of the deed, indicate that in intention as well as in legal effect Charles H. Upton acquired title under the mortgage for the joint benefit of himself and his daughter Mabel, the defendant.

"The question of contribution by the defendant or other owners of the estate in remainder was not involved by the pleadings, and no findings thereon are made by the trial court. The evidence does not conclusively or clearly show that the estate of the defendant in the property was lost through a refusal or failure to make contribution or a lien therefor on the premises existed in favor of Charles H. Upton at the time of his death. In this state of the findings and evidence, we cannot sustain the claim of the plaintiff that the conclusion of the trial court is contrary to law, because the plaintiff had at least a lien on the premises for some amount, which the owners of the remainder were bound to contribute because of the (366) payment of the mortgage by the life tenant. To sustain such claim of the plaintiff would involve the making by this court of a finding in plaintiff's favor upon conflicting evidence."

In the case of Hunt v. Watkins, 1 Hump., 498 (20 Tenn., 483) Reece, J., delivering the opinion of the court, at page 503 said:

"The debts in question were a charge upon the property devised, and it would have been competent for the executor, and his duty, to have sold the slaves and personal property bequeathed, and to have paid the debts, unless the owner for life or of the remainder, or both, and paid the debts or made some arrangement such as was in fact adopted. If such sale had taken place, the loss of each owner would have been in proportion to his interest in the property. As no sale took place, but a portion of the debts charged upon the property was paid by the annual profits accruing during the continuance of

the life estate, such payment so made was, in effect, and as to the equitable claim for contribution between the tenant for life and the remainderman, as if paid in money by the former, and out of her separate means or absolute property. If the property had been sold out for the payment of debts, their loss, as has been said, would of course have been in proportion to their interest in the estate, and if a surplus had been created by such sale the tenant for life would have been entitled to the interest upon such surplus, and the remainderman to the principal. Upon well-settled equitable principles it was the duty of the tenant for life to have kept down the interest of the debts charged upon the property. In the account therefore, which must be taken between the personal representatives of the tenant for life and the remainderman, it is not material to enquire into the products and expenses of the farm, into the particular times at which payments were made, or into the value of the hire of the slaves which absolutely belonged to the tenant for life. (505) It will be sufficient to ascertain the amount of payments by the tenant for life of the accruing interest, as the executor, in the arrangement made with the tenant for life, was in effect nothing more than her agent or bailiff in conducting the farm, selling the crops, etc.''

But the Chancellor should have required the remainderman to account to the life tenant for that portion of the encumbrance which it was his duty to pay, in this case one-half; but since the life tenant was under the duty to pay the interest on the encumbrance until the falling in of the life estate, then the remainderman is entitled to pay interest upon one-half of the encumbrance only from the date of the death of the life tenant. The assignments of error are, to this extent, sustained, and a lien will be declared upon the complainant's one-half interest in the property to secure the recovery.

But it will be insisted, since the life tenant paid $1372 in addition to the amount due under the encumbrance, that the remainderman should account for one-half of this sum. Ordinarily this might be true, especially when the principal of the encumbrance falls due without any act upon the part of the life tenant, but in this case it is apparent that the life tenant adopted the method pursued for the purpose of administering upon her husband's estate in this State, or more correctly, to sell the land of her husband for the payment of his debts. This method does not conform to the laws of Tennessee, and ignores the safeguards required in the sale of a decedent's land for the payment of his debts. The proceedings, which are certified in evidence, of the administration of the estate in Wisconsin, shows that a large part of this surplus was allotted

to the widow in that State as the widow's share, known in this State as the year's support. This would not have been justified in Tennessee, for the reason that funds arising from the sale of real estate cannot be apportioned to the widow as a year's support. The remaining funds, after apportioning the widow her share referred to, was decreed her, upon proof that she had discharged certain obligations of the estate, and nothing appears which shows the debts were not voluntarily discharged, or that they were in fact chargeable against the estate. Giving full faith and credit to the judgment of a sister State, yet before the real estate of a decedent in Tennessee can be subjected to the payment of debts, our statute must be complied with, and the method pursued in this case does not meet the sanction of the court. For this reason we hold that the remainderman is not required to contribute one-half of the proceeds of the sale above the encumbrance.

## IV.

The statute of limitation is pleaded and relied upon by the defendants. We do not think the statute applicable, because the present owners acquired the life estate of the life tenant and their holding was not adverse, but was under a claim of right, until the falling in of the life. estate, which only occurred in 1923, or a short time before the filing of the bill in this cause. Smith v. Cross, 125 Tenn., 160; Southern Ry. Co. v. Jennings, 130 Tenn., 456.

The Chancellor held as a fact that the relationship between Mrs. Augusta Gratz and sister and their physician, A. G. Kyle, was one of confidence, and that he acquired the property without payment of full value, and that the transaction was fraudulent in fact. We do not feel called upon to pass upon this question, because the complainant has established her rights in this action, and it is immaterial to her what the relationship was between Mrs. Gratz and her physician.

This proceeding is prosecuted, and is, in the nature of an ejectment bill, and also a bill to remove cloud upon title, and prays for an adjudication of the rights of the parties and a partition of the estate among the tenants in common. We think it broad enough to cover the issues made and the relief granted.

The decree of the Chancellor is in all things affirmed, with the exception that the appellant is given a recovery against the appellee for one-half the encumbrance resting against the estate at the date of the foreclosure, plus interest from the date of the death of the life tenant, and a lien will be declared upon the interest of the remainderman to this extent. The case is remanded for the purpose of carrying out the reference. The appellant will pay four-fifths and the appellee will pay one-fifth of the cost of the ap-

peal. The costs of the cause below will remain as taxed by the Chancellor, and that hereafter accruing will be paid as ordered by the Chancellor.

Snodgrass and Thompson, JJ., concur.