MORROW v. PERSON *et al.*

(*Jackson,* April Term, 1953.)

Opinion filed June 5, 1953.

TROY W. TOMLIN, of Somerville, WILLIAM A. PERCY and WALKER PERCY, both of Memphis, for appellant.

A. W. KETCHUM and H. JENNINGS GOZA, JR., both of Memphis, for appellees.

Mʀ. Jᴜꜱᴛɪᴄᴇ Tᴏᴍʟɪɴꜱᴏɴ delivered the opinion of the Court.

Jake McCulley died in December of 1912 the owner of the four tracts of land involved in this litigation. A paper purporting to be his will was probated in common form as such in 1915. His widow died in 1917. His only child was a daughter named Sylvia Person. In 1932 and 1935, respectively, Sylvia Person mortgaged these four tracts of land. Howison Morrow, the appellant here, became the purchaser under the foreclosure of each of these mortgages, and has been in possession since 1935 as to three tracts, and since 1938 as to the other one.

Upon the death of Sylvia Person in 1950 some of her children filed the bill in this cause for the purpose of procuring a partition in kind of the four tracts mentioned. Morrow was made a defendant. The bill alleges that Jake McCulley's will dated in 1904, probated in 1915, devised his daughter, Sylvia Person, a life estate in this property with remainder interest to her children. If this be true, then the aforesaid mortgages executed by Sylvia only conveyed her life estate in these tracts of land, with the result that her children or grandchildren became, by virtue of McCulley's will, entitled to possession upon her death in 1950.

The first insistence made by the answer of Morrow is that the order admitting this will to probate is void on its face in that this order affirmatively shows that insufficient proof, as a matter of law, was offered to establish it as a fact that this instrument was ever executed by Jake McCulley in the manner required by law. Based upon this premise, it is insisted that Sylvia Person became the owner of said tracts by inheritance; hence, that her subsequent mortgages thereof did convey a fee-simple title. The Chancellor rejected this, and other insistences of Morrow hereinafter stated, and sustained the bill. Morrow's appeal is to this Court because the facts were stipulated.

McCulley executed this paper by making his mark. A photostatic copy thereof discloses that the writing in the body of this paper is in longhand. The order of probate recites that named witnesses testified that this handwriting was that of E. R. Scruggs, an attorney practicing at Somerville when this will was executed, but dead at the time the will was offered for probate. The Chancellor found that the words "Jake X McCulley" were written by the same person who wrote the body of the will, to wit, attorney Scruggs. It clearly so appears.

It is recited in the order of probate that the widow of Jake McCulley produced this paper writing in open Court and, in connection therewith, testified that her husband died in 1912, and on occasion prior thereto had shown her this paper writing, told her it was his will, and had been drafted, at his direction, by E. R. Scruggs, a practicing attorney at Somerville, and that S. C. Skinner and another person whose name she did not remember had witnessed it; that he placed it in a box in which he

kept other valuable papers, and so told her; and that she found it there a short while after his death.

The foregoing testimony and the aforementioned identity of handwriting revealed upon the face of this paper writing amount to evidence in the proceedings to probate this will, and so shown on the face of such proceedings, that this paper writing was prepared by the attorney for McCulley as McCulley's will at the direction of McCulley, and that McCulley's name was signed thereto by McCulley's attorney, and that after it was so signed it was treated by McCulley as his will, which will, according to his statement, had been witnessed by S. C. Skinner with the knowledge of McCulley.

The names of M. R. Henley and S. C. Skinner appear on said will under the word "witness", Henley's name appearing first. The order of probate recites that in these proceedings M. R. Henley and one J. P. Bowers testified that S. C. Skinner died prior to the probate proceedings; that these two witnesses were well acquainted with his genuine signature, and that the signature S. C. Skinner appearing on said paper writing under the word "witness" is the genuine signature of the said S. C. Skinner.

Since it was made to appear that the subscribing witness, Skinner, was dead at the time of the probate proceedings, "his handwriting and signature were properly allowed to be proved by other witnesses." *Maxwell v. Hill,* 89 Tenn. 584, 587, 15 S. W. 253, 254.

The foregoing testimony of Henley, Bowers and the widow amount to evidence introduced in the proceedings to probate this will, and so shown in the order of probate, that S. C. Skinner signed his name to this will of McCulley as an attesting witness in accordance with the wishes of McCulley.

■ There is no evidence, in so far as the order of probate discloses, as to whether Skinner was or not in the presence of McCulley when he attested this writing. In this situation "the presumption that the attestation was made in the presence of the testator is conclusive". *Beadles* v. *Alexander,* 68 Tenn. 604, 609-610.

Subscribing witness M. R. Henley testified, according to the recitations of the order of probate, that, though his recollection is dim about the transaction, his genuine signature is signed to the paper writing as an attesting witness to the signature of Jake McCulley, and that he would not have signed the paper writing as such witness "unless he had seen testator sign it or heard him acknowledge the signature", and "feels assured that he would not have attested the paper except at the testator's request and in his presence after seeing him sign or hearing him acknowledge his signature".

The probate court proceedings were had eleven years after the execution of this paper. Pritchard, in his text on Wills and Administrations, in discussing the infirmity of the recollection of attesting witnesses due to lapse of time said at Section 336 that where subscribing witnesses recognize their signatures and testify that "they would not have placed them to the instrument unless they had seen the testator sign it, or heard him acknowledge his signature, the due execution may be presumed". A case from Kentucky and South Carolina, respectively, are cited in support of this statement of the text. No decision of our Court is found on this identical point. The text of 57 American Jurisprudence, Wills, Sections 880 and 906 are to the same effect.

It is affirmatively established by the terms of McCulley's will that neither of the attesting witnesses is inter-

ested in the devise made by this paper of McCulley's lands.

In view of present statutory requirements it is perhaps proper to observe that at the time of the probate of the paper in question here it was not a prerequisite to its validity as a devise of real estate that either of the attesting witnesses see the testator sign the paper or that these attesting witnesses subscribe it in the presence of each other. *Long* v. *Mickler,* 133 Tenn. 51, 53, 179 S. W. 477.

All the foregoing testimony affirmatively appears on the face of the probate proceedings, or in the order probating this paper as the will of McCulley. There is no evidence to the contrary. This is affirmative evidence that the paper was signed by McCulley's attorney in the presence of McCulley and by his direction as his will, and was subscribed in his presence, and at his request by two attesting witnesses neither of whom was interested in the devise therein made of McCulley's lands. Nothing further was required to establish a good and sufficient devise of these lands under the statutory requirements then existing, those requirements being specified in Section 8089 of the 1932 Code.

Thus, since the will was proved by one of the subscribing witnesses, as required by Code Section 8102, it follows that the order probating this paper writing as the will of McCulley was supported by evidence affirmatively appearing in the record, and is a valid order of probate, unless it be that the order is void because it is not affirmatively shown on the face of the probate proceedings, so appellant Morrow insists, that McCulley knew the contents of this will.

The insistence by Morrow just above stated is based upon the fact that the signature of McCulley is by

his mark, his name being written by his attorney. In *Bartee* v. *Thompson,* 67 Tenn. 508, 513, it was held that "the fact that a will is executed by a testator by making his mark, is prima facie evidence of his inability to write or to read writing". This case further holds that when such a situation appears in the proceedings to probate a will "there must be other evidence of knowledge of the contents of the will than the mere fact of its formal execution, before the proponents would be entitled to a verdict establishing it".

The same rule had been previously declared in *Cox* v. *Cox,* 36 Tenn. 81. That decision, in discussing the quantum of evidence required as to knowledge of the testator of the contents of the will, said that the law has not prescribed any precise rule "in respect to the mode or measure of proof by which this fact shall be established", but "all that in reason can be necessary is, that it shall be made to appear to the entire satisfaction of the jury that the testator fully understood and assented to the provisions of the will", and that this fact "may be established either by positive proof, or by circumstances of a nature to convince the mind of its truth. In other words, it may be established just in the same way, as regards the measure and kind of evidence, as any other disputed matter of fact". 36 Tenn. at page 88. In *Maxwell* v. *Hill,* 89 Tenn. 584, 593, 15 S. W. 253, 255, it is said that the strength and conclusive character of the proof, whether direct or circumstantial, "must depend upon the degree of suspicion which the circumstances are calculated to excite".

In the instant case the circumstances surrounding the execution and attesting of this will, as well as the devises made therein, are not circumstances which would reasonably beget any degree of suspicion that a fraud

may have been practiced upon the testator. The will was drawn at the instance of the testator by an attorney selected by him. Reason and general knowledge of the common practice requires the conclusion, in the absence of contrary proof, that this attorney placed in that will what his client directed and read the will as written to his client, since he knew that his client could not read. The attesting witnesses had no interest in the matter. The widow, children and grandchildren are the only persons mentioned in this will as the object of the testator's bounty. They are the ones upon whom he would naturally bestow his bounty. There being nothing to arouse suspicion, the circumstantial evidence mentioned was of sufficient strength and character to support the conclusion that McCulley was aware of the contents of his will.

 Thus it is that the record of the probate proceedings and the order of probate in the County Court affirmatively disclose that sufficient proof was submitted in those proceedings to authorize the order probating this paper writing as the will of McCulley. Its probate, therefore, is evidence of the devise therein made of the real estate of this testator. Code Section 8139. A party claiming realty under such probated will has made out his case prima facie upon the production of an attested or certified copy of such will. Code Section 8140; *Grier* v. *Canada,* 119 Tenn. 17, 29-30, 107 S. W. 970.

 Since no evidence of fraud in procuring the probate of this will was introduced, it follows that the Chancellor was correct in holding that the title to the realty in question must be determined by the provisions of the will of McCulley. In this connection, it is Morrow's insistence that by this will, when properly construed, the testator devised his daughter, Sylvia Person, a fee sim-

ple title to said lands, subject only to the life estate of the testator's widow; hence, that her mortgages conveyed fee-simple title. This will, after directing the payment of debts and funeral expenses, continues in the same sentence as follows:

"and the balance of my property real, personal and mixed I bequeath and give to my beloved wife Sallie McCully for and during her natural life, and at her death to my daughter 'Sylvia Persons, free from the debts liabilities, or contracts of her present or any future husband she may have, with power to act with same as a feme sole,—and after her death to her children".

In the opinion of this Court this language clearly discloses an intention upon the part of McCulley to devise his daughter, Sylvia, a life estate only in the lands in question with remainder to her children.

It follows that the living children of Sylvia Person and the descendants of predeceased children become entitled, as absolute owners, to the possession of this real estate upon the death of Sylvia Person in 1950. The mortgages of Sylvia Person under which Morrow claims title could only be effective to convey the life estate of Sylvia Person in such realty.

One of the three tracts of land purchased under foreclosure by Morrow in 1935 was Tract No. 2. In November, 1940 this tract was sold to one Ingramham for delinquent drainage district assessments for the years 1937-1940, inclusive. About fifteen months thereafter Morrow purchased said tract from said Ingramham for $362, and received a redemption deed conveying this tract to himself (Morrow). It is the insistence of Morrow that he thereby acquired the title of the remaindermen in Tract No. 2 and should be held to be its owner in fee simple.

Because of the relation which existed between the life tenant and the remaindermen with reference to the tract of land in question the Chancellor held that the drainage assessments should be apportioned between the life tenant and the remaindermen. Since there was no evidence upon which to base an apportionment the Chancellor allowed Morrow to recover out of accrued rents the $362 paid by him. Morrow insists that he should have been adjudged the owner in fee of Tract No. 2 by reason of his redemption deed from Ingramham.

Drainage district taxes are special assessments regarded as " 'compensation for the increased value the property will derive from the improvement the assessment is levied to discharge.' " *Obion County for Use and Benefit of North Fork Drainage Dist. No. 2,* v. *Massengill,* 177 Tenn. 477, 484-485, 151 S. W. (2d) 156, 159. The improvement will benefit the life tenant as well as the remainderman. It is equitable, therefore, that the assessment be apportioned by some reasonable formula between life tenant and remainderman, as held by the Chancellor. The text of 31 C.J.S., Estates, Sec. 47, page 62, in stating such to be the rule, refers to decisions in a number of states.

A life tenant of land is a quasi trustee for the remainderman. He cannot, therefore, be allowed to so deal with the property as to defeat that remainder. *King* v. *Sharp,* 25 Tenn. 55, 57. Whatever may have been his motive when this land was sold for delinquent assessments part of which at least was owed by life tenant, Morrow, who then acquired a conveyance of the land from such purchaser, it was a dealing by the life tenant, Morrow, with the property in such a manner as to defeat the remainder. It would be contrary to public policy to hold otherwise than that a title so acquired by a life ten-

ant must be considered a redemption and restoration of the rights of the remainderman as well as the life tenant with an obligation upon the part of remaindermen to pay their portion of delinquent assessments as held by the Chancellor. *Miller* v. *Gratz,* 3 Tenn. App. 498, fully sustains, in principle, this holding.

Other questions made by the unusually well prepared briefs will not be considered since that which we have here concluded is determinative of the case.

Affirmed with costs adjudged against Morrow.