WHYTE BEDFORD et al.

*v.*

L. S. MEGEL et al.

(*Nashville,* December Term, 1956.)

Opinion filed April 1, 1957.

Rehearing Denied May 3, 1957.

(1)

WARING, WALKER, COX & LEWIS, CARROLL C. JOHNSON, ERICH W. MERRILL, Memphis, for appellants.

COOPER TURNER, JR., CANADA, RUSSELL, TURNER & ALEXANDER, JOHN PORTER, BURCH, PORTER, JOHNSON & BROWN, Memphis, for appellees.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is an original bill filed to establish the legal title in the complainants, and to recover 255 acres of valuable land in Shelby County.

The Chancellor sustained the demurrer to the bill, and this appeal resulted.

The bill charges that the original ancestor, W. H. Bedford, died intestate in Shelby County on February 5, 1899, leaving a widow and two minor children, age eight and ten years, respectively. At the time of his death, W. H. Bedford had placed a mortgage on the property for $1,000. After his death a proceedings was held in the probate court of Shelby County in April, 1899, and a homestead in said lands was set aside to Lillah Bedford, widow of the said W. H. Bedford, subject to the mortgage of $1,000, which the deceased had placed on the property.

In the Probate proceedings the following order appears:

"Said tracts 1 and 2 above described (the 255 acre tract and the 10½ acre tract) were encumbered in the fall of 1897 by W. H. Bedford and wife conveying same by trust deed to Trustee to secure a loan of $1,000.00 and interest which encumbrance we are informed still exists. It is recorded in Book 253 at page 535 of the Register's Office. For this reason said W. H. Bedford owned only the equity of redemption therein. The homestead right in said lands is by said deed of trust waived & conveyed for the benefit of the beneficiary in same but we are advised that Mrs. Lillah Bedford who still resides with her family on the land is entitled to homestead in said equity of redemption as against all other persons. These two tracts of land we have valued at $2,000.00 if unencumbered and we value said equity of redemption therein at $1,000.00 * * * After mature deliberation and consultation together we have assigned and do hereby allot and set apart to Mrs. Lillah A. Bedford as her homestead the equity of redemption

4

in said tracts first above described and designated as No. 1 and No. 2, it being understood that she is to remain as now in possession of same enjoying the rents & profits until such time as the beneficiary in said deed of trust see fit, if at all, to sell the lands for the payment of their debts in said trust deed decribed.''

The owner of the indebtedness secured by the deed of trust, Farmers Savings Building and Loan Association, was declared insolvent on April 23, 1900, and W. H. Raymond appointed receiver (he was also trustee named in the trust deed), and was directed by the court to collect all notes, debts and mortgages due the insolvent.

The trustee advertised the property for sale for cash free from the equity of redemption as provided by the trust deed.

On April 17, 1902, the sale was had and the 255 acre tract was struck off and sold to H. Irby for $777.77.

On the 8th day of May, 1902, Irby conveyed the said tract No. 1 being the 255-acre tract to Mrs. Lillah Bedford for a consideration of $900. This was a credit sale, and Mrs. Bedford executed a trust deed to Fletcher, trustee, to secure the purchase money debt by conveying tract No. 1, the 255-acre tract, and also her interest in the 10½-acre tract. A marginal release showed that Mrs. Bedford had fully paid the purchase money and that the lien of the deed of trust executed by her to Fletcher was released on February 2, 1906.

After the time of the foreclosure in 1902 by W. H. Raymond, trustee, the complainant Whyte Bedford was

11 years of age and his brother W. H. Bedford was 13 years old.

After the death of Mr. Bedford his widow and these two children resided on these two tracts of land. Mrs. Bedford died April 28, 1955, after she had executed several deeds to the property.

The principal charge in the bill is that Mrs. Lillah Bedford bought the property from Irby on May 8, 1902, and that she should be held as trustee of said property for the benefit of these two children. It will be noted that after Irby bought the property by trustee's deed dated April 19, 1902, for $777.77, that he did not convey the property to Mrs. Bedford until about three weeks later. She then bought the property for $900, which was paid about two years later.

It is not charged that Irby purchased the property as the agent of Mrs. Bedford, and the fact that Irby bought the property in at $777.77, and resold it to Mrs. Bedford for $900 would indicate that he was not acting as her agent in making the purchase.

It also appears that the trust deed executed by W. H. Bedford in his lifetime only one of the tracts was sold to satisfy the debt, that being the 255-acre tract. If this had been a scheme to defraud the minors it seems reasonable that both tracts would have been sold.

It also appears from the Commissioners report referred to above in this opinion that both tracts had a reasonable value of $2,000 if unencumbered. And since these two tracts were encumbered by a mortgage securing a debt of $1,000 the Commissioners found that the equity of redemption had a reasonable value of $1,000.

One of the tracts sold for $777.77. This would indicate a reasonable value rather than an unreasonable one.

It is said in Gibson's Suits in Chancery, Section 149, subsection 3:

"A general charge of fraud is nugatory, for fraud is not so much a fact as a conclusion deduced from facts; and a bill charging fraud in general terms as the ground for relief and setting forth no particulars showing the fraud will be dismissed on demurrer."

See *Young v. Brannan*, 5 Tenn. App. 1; *Mackie v. Fuqua*, 14 Tenn. App. 176; *Lyle v. Pouder*, 163 Tenn. 426, 43 S.W.2d 194.

In the present case no irregularities are pointed out in the trustee's deed from Raymond, trustee, to Irby. The record title in Irby was good and there would have been no reason for any person examining the title to this property to question his title. Thereafter Irby sold the property at a profit to Mrs. Bedford. If there were secret understandings between Mrs. Bedford and Irby they do not appear of record.

The single circumstance relied on is that the trustee's deed to Irby and the deed from Irby to Mrs. Bedford were recorded on the same day. This is no indication of fraud and such transactions appear regularly in the transfer of titles to property.

Complainants rely upon *Miller v. Gratz*, 3 Tenn. App. 498; *Quarles v. Arthur*, 33 Tenn. App. 291, 231 S.W.2d 589; *Morrow v. Person*, 195 Tenn. 370, 259 S.W.2d 665, and *Edwards v. Puckett*, 196 Tenn. 560, 268 S.W.2d 582. These cases are distinguishable from the present case in

that in each of the cases cited the estate of the life tenant continued up until the attempted purchase of all outstanding interest by the life tenant from another for his, or her, exclusive benefit, or in the alternative, the life tenant purchased within the period of redemption so that the purchase merely amounted to a payment.

In the present case W. H. Bedford executed a deed of trust in which the right of redemption and repurchase were waived. The widow, Lillah Bedford, was assigned homestead in the equity of redemption only. Following the death of her husband this deed of trust was foreclosed and the property was purchased by H. Irby at the foreclosure sale. No facts are stated which would indicate that this foreclosure sale was void or voidable for any reason. When the trustee's deed was executed by H. Irby he became the absolute owner of the fee, and neither Lillah Bedford nor her children had any interest in the property or any right to redeem the property. In that situation Mrs. Bedford purchased the property from Irby and executed a trust deed for the purchase price of $900. She was not purchasing under a right of redemption; she was not purchasing in order to preserve her own title to the detriment of the children but on the contrary, neither she, nor the children, had any title nor legal interest in the property at the time the purchase was made. *Adams v. Brown,* 63 Tenn. 124; *McGee v. Carter,* 31 Tenn. App. 141, 212 S.W.2d 902.

The complainants also rely on the case of *Texas Co. v. Aycock,* 190 Tenn. 16, 227 S.W.2d 41, 43, 17 A.L.R.,2d 322, in support of the general rule that whatever is sufficient to put a person upon inquiry is equivalent to notice, and that when he has sufficient information to lead him

to the knowledge of a fact, he shall be presumed to be cognizant of the fact. No such source of information appears in this record in this case. In the case just cited the deed from Brown to Aycock stated on its face that the property was unencumbered "except (1) a lease to Texas Company." The Court held that Aycock was charged with the knowledge of the contents of that lease.

We are of the opinion that the defendants are innocent purchasers for value of the several tracts of land, and that the Chancellor was correct in sustaining the demurrer. Affirmed.