**Phyllis W. FINLAY, Co-Executrix, and Phil B. Whitaker, Substitute Co-Executor, of the Estate of Mary Louise Finlay, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 83–5646.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 26, 1984.

Decided Jan. 18, 1985.

76, 133 N.E.2d 336 (1959).

ment but not the opinion of the district court.

Edward Finlay, a lawyer, executed a holographic will on December 5, 1946. The will provided in relevant part:

> All the rest and residue of my Estate I give in Trust to Mary Louise for life with the right to encroach if she desires. As Trustee she shall without legal limitation have the right to administer this trust as if it were individually owned. Upon the death of Mary Louise or should she predecease me, my residuary Trust Estate shall be divided equally between my other grandchildren. If however Tavenner & Teddy are my only grandchildren at the time of my demise, Tavenner shall take ¾ & Teddy ¼. This equalizes the rule of primogeniture.
>
> I nominate & appoint Mary Louise Finlay & Edward Finlay, Jr., as executors of my will, and expressly excuse either or both from giving Bond. I also excuse Mary Louise as Trustee of my Residuary Estate from making Bond or rendering any reports, or accounting to anyone whomsoever.

Edward Finlay died on March 10, 1947, and his wife, Mary Louise Finlay, became the sole trustee and beneficiary of the residuary trust estate provided in the will.

In 1975 it was decided to sell certain stocks held by the trust. The sales agreement included a warranty that the shareholder had the legal right and power to convey absolute ownership. As it was no longer certain that Mary Louise Finlay was of sound mind, Edward Finlay, Jr., and Tavenner Finlay Hall, the remaindermen and ultimate beneficiaries of the trust, petitioned the Chancery Court for Hamilton County, Tennessee, for her removal as trustee. Scott Brown, Jr., was appointed her guardian ad litem. Brown agreed with Dr. David McCallie, Mary Louise's personal physician, that she was not competent and recommended to the court that American

John W. Gill, Jr., U.S. Atty., Chattanooga, Tenn., Jack D. Warren, Glenn L. Archer, Jr. (Lead), Asst. Atty. Gen., argued, Michael L. Paup, Bruce R. Ellisen, Chief, Appellate Section, Robert A. Bernstein, Tax Division, Dept. of Justice, Washington, D.C., for defendant-appellant.

Phil B. Whitaker, argued, Witt, Gaither & Whitaker, Gale Graham Jones, Chattanooga, Tenn., for plaintiffs-appellees.

Before MARTIN and JONES, Circuit Judges, and POTTER, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

This is an appeal by the government from a judgment of the district court refunding estate taxes. We affirm the judgment

---

* Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation.

National Bank & Trust Company of Chattanooga be appointed trustee, as it had in fact been acting as the trustee for several years.

The Chancery Court appointed the bank trustee on May 16, 1975, and the bank accepted the appointment the same day. The bank in its formal acceptance agreed

to carry out all the terms and provisions of such Trust as set forth in such will, which terms and provisions the Bank construes to include the authority to, and pursuant to the Court's instructions the Bank agrees to, apply so much of the net income and principal as it deems desirable and necessary to supply the needs of Mary Louise Finlay, the beneficiary of such Trust, all of which it will do without the necessity of the appointment of a guardian for Mary Louise Finlay.

Mary Louise died on December 17, 1975. The value of the residuary trust, more than $1,000,000, was not included in her estate for estate tax purposes. The Internal Revenue Service audited the return and assessed a deficiency due to the failure to include the trust. The estate paid the deficiency and sued in district court for a refund of the contested amount.

The court decided the case on cross motions for summary judgment. It ruled first that the trust was not invalid by reason of a merger of the legal and equitable estates in the person of Mary Louise Finlay. The government has not appealed from this ruling. Second, the court ruled that the trust created a general power of appointment under 26 U.S.C. § 2041 in Mary Louise, as there was no limiting ascertainable standard. But the court ruled that the general power of appointment no longer existed after her removal as trustee. The estate therefore recovered $455,269.70 in estate taxes and $76,747.25 in assessed interest, with interest and costs of action. The government appealed.

■ The inability to exercise a general power of appointment because of legal incompetence does not preclude the application of 26 U.S.C. § 2041. *Alperstein v. Commissioner*, 613 F.2d 1213 (2d Cir.

1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980). The district court distinguished *Alperstein* on the ground that a different trustee had been appointed. We need not consider whether this was a distinction with a difference, for we hold that the power was subject to an ascertainable standard.

General powers of appointment are includible in the gross estate under 26 U.S.C. § 2041. A general power of appointment is defined as

a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

26 U.S.C. § 2041(b)(1). The power was thus a general power of appointment unless it was limited by "an ascertainable standard relating to the health, education, support, or maintenance of the decedent." The regulations provide that "the words 'support' and 'maintenance' are synonymous and their meaning is not limited to the bare necessities of life." Treas.Reg. § 20.2041-1(c)(2).

■ Although the presence or absence of an ascertainable standard is a question of federal tax law, it must be determined by examining the law of the decedent's home state, Tennessee. *Huggins v. United States*, 684 F.2d 417, 420 (6th Cir.1982). In practical terms, there is an ascertainable standard if and only if, in the eventuality that Mary Louise had used more of the corpus of the trust than was proper for her support and maintenance, the remaindermen could successfully have proceeded against her for the amount of waste.

■ This trust for life, with the beneficiary as trustee, is analogous to a life estate. The owner of a life estate normally is entitled to the issues and profits of that

estate, but no more. *Thompson v. Thompson,* 206 Tenn. 202, 332 S.W.2d 221 (1960); Restatement of Property §§ 119, 138 (1936); *see Morrow v. Person,* 195 Tenn. 370, 259 S.W.2d 665, 670 (1953) (holding that life tenant is a quasi trustee for the remainderman). The question is whether Mary Louise's "right to encroach" gave her only the right to as much of the principal as was required for her support and maintenance, or the right to some greater amount of the principal. For example, "[a] power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard." Treas.Reg. § 20.2041–1(c)(2).

 Although the Supreme Court of Tennessee has not explicitly decided this question, *see Holley v. Marks,* 535 S.W.2d 861 (Tenn.1976), precedent from the Tennessee Court of Appeals convinces us that a "support and maintenance" limitation would be applied. In *Jones v. McMurrey,* 25 Tenn.App. 47, 150 S.W.2d 713 (1941), the decedent left all his property to his wife "to be used as she see fit, as long as she lives," and on her death whatever property was left was to go to his foster son and three brothers. The widow brought suit to determine her rights under the will. The court held,

> We think the intent of the testator was that she should have the right to use all the property, the rents, income and the corpus, for her support and maintenance during her life, and if at her death any of it was left it should go to the remaindermen. That is to say, the will vested in her a life estate, coupled with the power to dispose of all the property only if and when she might find it necessary for her personal use.

150 S.W.2d at 714. *Jones* was followed in *Skovron v. Third National Bank,* 509 S.W.2d 497, 511 (Tenn.Ct.App.1973), which involved similar facts.

The Internal Revenue Service argues this case is controlled by *Ewing v. Rountree,* 346 F.2d 471 (6th Cir.1965), *cert. denied,* 382 U.S. 918, 86 S.Ct. 292, 15 L.Ed.2d 918 (1965). In *Ewing* there was a conventional trust for life with a beneficiary who could invade the corpus as she desired. The beneficiary had the power to invade as well as not to invade the corpus, and she was not in a position of trust or quasi trust for the remaindermen. The rules applicable to life estates had no bearing in *Ewing.*

Because we find that Tennessee law would not have allowed Mary Louise Finlay to invade the corpus of the trust beyond what was needed for her reasonable support and maintenance, we hold that there was an ascertainable standard precluding any general power of appointment under 26 U.S.C. § 2041.

The case is affirmed.