Edd G. Thompson, Petitioner,

*v.*

Leona Osborne Thompson, Respondent.

(*Nashville,* December Term, 1959.)

Opinion filed February 5, 1960.

Wm. C. Sugg, Fayetteville, for petitioner.

Templeton & Thompson, Fayetteville, Braly Craig, Lewisburg, for respondent.

Mr. Justice Swepston delivered the opinion of the Court.

We granted certiorari in this case because the question involved is an important one.

The original complainant Leona Osborne Thompson filed her original bill under the Declaratory Judgments Act T.C.A. sec. 23-1101 et seq. seeking a determination of her rights as a life tenant under the will of her husband, J. B. Thompson, deceased, who died testate in Lincoln County, Tennessee, on August 30, 1953.

The specific purposes of the bill are to determine:

(1) Whether as such life tenant complainant had the unrestricted right to sell timber; or

(2) If not, then to determine whether she had the right to sell timber that, if not cut, will damage the remainder of the timber—that is, the right to cut timber for the sake of good husbandry; or

(3) If neither of the above, then to determine whether she might cut and sell timber and use the proceeds of same for the purpose of making necessary repairs to buildings now on said premises.

The bill further alleged that she had entered into a certain contract to sell certain timber but that some question had been raised by the proposed purchaser of her right to sell the same and that one of the remaindermen had informed said prospective purchaser that, if and when logging was started upon said tract of timber, he would immediately institute legal proceedings, so that said sale was not consummated.

The defendant Edd G. Thompson, individually and on behalf of his children as possible remaindermen, filed an answer in which it was denied that said life tenant had the right on any basis alleged in said bill to sell any of said timber. Defendant further alleged that he was unaware of any repairs needed but that the income from said property should be sufficient to take care of any necessary repairs and that on the settlement by the executor of the will of said J. B. Thompson, deceased, on June 24, 1954, complainant was paid the sum of $1,370.24, which together with the income from the farm is more than sufficient to provide complainant a livelihood and maintain the buildings on said farm in proper repair.

The case was heard by the chancellor upon oral testimony. The evidence was uncontradicted and the chancellor so held and decreed that complainant has the right to cut and sell cedar timber which is now growing or which will hereafter grow upon said premises upon its attainment of sufficient size and growth to produce a log of not less than 4″ in diameter at the little end and at such time or times as she deems proper during her tenure as a life tenant and the proceeds derived from the sale of such timber shall become the property of said complainant absolutely without restriction or limitation as to its use or disposition by her.

He further held that she has the right to cut and sell oak timber which is now growing, or which will hereafter grow, upon said premises upon its attainment of sufficient size and growth to produce a log, if said tree or trees have any damage whatsoever, of not less than 14″ in diameter, or if said timber is healthy without damage and not less than 20″, and the proceeds derived there-

from shall likewise become her absolute property as stated in the above paragraph. The chancellor taxed all costs against the defendant Edd G. Thompson.

The Court of Appeals, after reciting the substance of the evidence, concurred in the conclusion of the chancellor with reference to the sale of the cedar timber but made no mention of the fact that the chancellor decreed also with reference to the oak timber as heretofore stated. That error seems to have been due to a difference between the short memorandum filed by the chancellor in which he mentioned only the cedar and the final decree in which he included both the cedar and the oak.

The Court of Appeals next considered the question of whether or not the language of the will, referred to infra, creates an estate unimpeachable for waste. After quoting certain provisions of the said will and making reference to certain authorities, the Court of Appeals concluded that the will creates an estate unimpeachable for waste and, therefore, permits the harvesting of suitable *timber crops* by the life tenant.

The Court of Appeals also divided the costs equally between complainant and defendant.

The petitioner Thompson assigns three errors to the action of the Court of Appeals:

(1) The Court of Appeals erred in holding that timber was to be considered as a growing crop to be harvested when sufficiently mature and in construing Item VIII of the will of J. B. Thompson, deceased, as creating in the life tenant an estate unimpeachable for waste and as permitting the harvesting of suitable timber crops by the life tenant;

(2) The Court of Appeals erred in overruling petitioner's Assignment of Error No. 1 made in the Court of Appeals, which is as follows:

"The chancellor erred in holding that the complainant as life tenant, would not be guilty of waste in cutting the cedar and oak timber located on the premises for the reason that there is no evidence to support the judgment of the court";

(3) The Court of Appeals erred in overruling petitioner's Assignment of Error No. 3 made in the Court of Appeals for the reason that the Court of Appeals taxed complainant with only half the costs. Said assignment of error is as follows:

"The chancellor erred in taxing the costs of the cause against the defendants for the reason that the relief sought was solely for the protection of the complainant."

It is proper to consider the first above assignment of error first, because if the Court of Appeals was correct in holding that said will of J. B. Thompson created in his widow an estate unimpeachable for waste and as permitting the harvesting of suitable timber crops by said life tenant, then the second assignment of error becomes immaterial.

It becomes necessary accordingly to examine the contents of said will. The opinion of the Court of Appeals contains a succinct and correct abstract of the contents of the will, quoting certain particularly material parts of same and without quotation marks, we avail ourselves of the same as follows:

The will of J. B. Thompson, deceased, provides, among other things, (Item I) for the payment of funeral expenses and just debts; (Item II) the household and kitchen furniture bequeathed to his wife, Leona Osborne Thompson; (Item III) farm machinery, and implements owned by him are bequeathed to his wife; (Item IV) fifteen cows, two work mules and certain other live stock bequeathed to his wife, the remainder of the live stock to be sold by the executor and the proceeds applied first to the payment of debts; (Item V) all corn, hay and crops to go to the wife; (Item VI) cotton to be sold by the executor and the proceeds applied to the payment of debts; (Item VII) here is a recitation of the different tracts or parcels of land owned by the testator and the following recitation concerning some of those lands:

"On the Malone lands, the Hampton lands and to some extent the Tom and Maggie Kelso lands there is considerable valuable timber, and my expectations are that said timber can be sold and disposed of for a substantial sum."

(Item VIII),

"I hereby set aside for the use and benefit of Leona Osborne Thompson, my beloved wife, for and during the period of her natural life only, my said farm known as the 'River Farm', containing approximately 214 acres, more or less, being the same farm coming to me by deed of O. B. Thompson as above referred to.

"It is my desire, and I hereby authorize and direct that she shall have the full, free and unrestricted use of said farm for and during the period of her natural life only, during which time she shall have and receive

as her own all the rents, profits and emoluments therefrom; but from said rents, profits and emoluments she shall pay all State and County taxes assessed against said real estate and she shall keep the main building on the premises insured for a reasonable valuation against loss from fire lightning and tornado.''

In said item it is further provided that in the event of the loss by fire, lightning, etc., the proceeds of any insurance collected shall be used for the repair or rebuilding of buildings that might be damaged or destroyed and the executor is authorized and directed to see that the taxes are paid and buildings are kept insured but he is excused from liability by reason of any default in the payment of taxes or lapse of insurance.

It is further provided in said item that following the day and date of the death of Leona Osborne Thompson, said tract or parcel of land shall be sold at public outcry to the highest and best bidder setting out the terms, etc., and including a provision as follows:

"In making sale of said real estate the interest of my beloved wife, the said Leona Osborne Thompson in any crops then growing on said farm shall be duly recognized and protected.''

It is then recited that there is a deed of trust on said real estate to secure an indebtedness of $4,167.10 owing to R. D. Cowley, plus $264.11 unpaid taxes but it is further recited that "It is expected that said indebtedness will be fully paid off and discharged from the proceeds of the sale of my other real estate, and personal property.''

(Item IX) provides for a sale of all the other real estate by the executor including the right to sell the timber on said lands separately or before the sale of the land itself, or a sale with the timber standing, in the discretion of the executor; (Item X) provides that the proceeds from the sale of personal property shall first be applied towards the payment of funeral and burial expenses, next to the payment of just accounts and indebtedness and then to the outstanding real estate encumbrance due R. D. Cowley;

(Item XI) provides that the proceeds from the sale of real estate and timber as provided in Item IX be used toward the payment of accounts and indebtedness and then towards the payment of the encumbrance on the real estate referred to in Item VIII.

(Item XII) provides that all the balance and residue of his estate from the sale of personal property and the sale of the part of the real estate except that devised to his wife for life, after payment of indebtedness is bequeathed to testator's wife Leona Osborne Thompson; (Item XIII) provides that after the widow's death the proceeds from the sale of the farm left to her for life goes to his brother Edd G. Thompson, provided that he then be living and in the event of his death to the other heirs per stirpes.

The foregoing material, as above stated, is copied from the opinion of the Court of Appeals.

The Court of Appeals then correctly states "as set out in 56 Am.Jur., 453, under the title 'Tenancies Unimpeachable for Waste', acts or conduct which would otherwise constitute waste may be authorized or legalized by

an appropriate provision in the instrument creating the tenancy, so as to relieve the tenant of liability therefor. The phrase 'without impeachment of waste' is usually employed for such purpose, however, these exact words are not always used and the courts have been called on to consider the effect of other words as creating such an estate.''

Said opinion then quotes language from certain cases some of which are found in 67 C.J. 612, sec. 5; 93 C.J.S. Waste sec. 1, relating to waste in note 23, in which the language was construed by the court to create an estate unimpeachable for waste. The opinion, however, recognizes that there is considerable variation in the phraseology of the instruments and in the conclusions of the various courts, as will be realized upon examination of 33 Am.Jur., 827 and 828, sec. 326.

The Court of Appeals then stated as follows:

''Looking to the entire will under consideration here and observing that the testator seemed anxious to provide adequately for his 'beloved wife' and observing further that he made specific provision for the cutting of timber of certain size and maturity on other tracts of land thus apparently recognizing that timber was to be considered as a growing crop to be harvested when sufficiently mature, we are constrained to view the instrument before us as creating an estate unimpeachable for waste and as permitting the harvesting of suitable timber crops by the life tenant.''

With deference to the Court of Appeals, we are of opinion that it has misconstrued the decree of the chancellor. The proof, as indicated in the opinion of the

Court of Appeals, is that with reference to the cedar the old trees are crowding out and hindering the growth of the younger trees and, if the older trees were left from one to five years longer, they would have no value whatsoever and many of them have no value now; that the sooner the old timber is cut, the better it will be for the young timber which will then grow twice a fast; further, that it is good practice to keep constantly cutting out the big stuff and giving the small a chance, because cedar grows ''awfully'' fast.

With reference to the oak, the testimony is that there is some ''nice'' oak growing in among the cedar but the majority of it is young and only the larger trees should be cut; that if the timber were to stand ten more years, it would depreciate in value probably one-half; whereas if it is cut now, five years from now you would get half as much again of merchantable timber; further, that no tree less than 14″ in diameter at the log end should be cut unless it had suffered damage because oak does not attain its full value until it reaches 20″ in diameter.

Now, as we understand the record, what the chancellor held was that the cutting of the cedar and oak timber as above specified would be a benefit instead of a detriment to the farm, but he made no mention of this farm having been operated as a tree farm or of this being an estate cultivated merely for the produce of salable timber. In fact, there is not the slightest evidence to sustain any such idea.

■■ It is a universal rule that a tenant for life who is impeachable for waste may not cut timber for sale for the purpose of profit, or authorize another to do the same, unless in the one instance it be a tree farm or wild

land valuable and operated only for its timber. 21 A.L.R. 1004, citing *McKee v. Dail,* 1 Tenn.Ch.App. 689. Moreover, we are constrained to differ with the Court of Appeals as to the construction of the language of the will above quoted, because it is restricted to these words "during which time she shall have and receive as her own all the rents, *profits* and emoluments therefrom". As above indicated, the sale of timber may not be made for the pure purpose of profit unless the land is held for the purpose of tree farming, although the life tenant be entitled to the proceeds of timber that is sold for the purpose of good husbandry, that is, the enhancement of the value of the farm.

Another matter entering into the construction of this language of the will is the fact that the testator called for the sale of timber on the lands other than this "River Farm" in which he gave his widow a life estate, thus evidencing the fact that he had in mind timber on his various lands. It does seem that in view of that fact that if he had wanted his widow to have the right to sell timber off of the River Farm for a profit, he would have so indicated by clear language in that part of his will relating to that tract of land.

We think it would be a dangerous policy to construe the language of an instrument creating a life estate in farm lands, on which timber is located, to confer upon the life tenant the unrestricted right to sell timber for a profit (not considering for the moment the question of the abuse of the privilege which might be enjoined in equity), unless the language and the surrounding circumstances are reasonably clear in compelling a conclusion to that effect.

It is, therefore, our opinion that the Court of Appeals was in error in this respect and the same is reversed and we hold that the life tenant is impeachable for waste.

██ Now with reference to the second assignment, we think it rather clear from what we have already said that that assignment must be overruled, because, as held by the chancellor in his memorandum opinion, only that which does a lasting damage to the remainder, or depreciates its value, is waste. *Owen v. Hyde,* 14 Tenn. 334.

█ The question then arises as to whether the life tenant who cuts and sells the timber for the purpose of enhancing the value of the farm is entitled to the proceeds of the sale of the timber.

We think the question is answered in *Owen v. Hyde,* supra, on page 339, wherein the widow had cut and sold an appreciable amount of timber for the purpose of clearing additional land and putting same in cultivation in order to increase the production of income on the farm. It it said:

"It is not a question, then, whether the dowager cut the timber from this fifteen acres as a necessary means of support, but it is, did she materially injure the dower estate thereby? If so, she would be liable to an action for waste; but if not, although the clearing was not necessary for her support, and although she may have done it for the purpose of profit, she is not liable. If the cleared land on the dower estate was old and worn, and if the proportion of wood land was such as that a prudent farmer would have considered it best to reduce a portion of it to cultivation, whereby to relieve the old land from excess of culture, and thus enhance the value of the whole dower estate, such

clearing would not be waste, provided 'sufficient timber for the permanent use of the dower estate' were left. 7 John. 227; 4 Kent, 76.''

Then in 37 L.R.A.,N.S., 772, on the right hand column at the top are cited several cases holding that the life tenant is entitled to the proceeds of timber cut in good faith for the purpose of putting land into cultivation for the purpose of enhancing the value of the whole farm.

The same principle should apply in this case even though the timber was not cut for the purpose of putting the land in cultivation, for it was cut for the purpose of preserving and enhancing the value of the farm generally.

Assignment 2 is accordingly overruled.

Assignment 3 is overruled for the reason that the Court of Appeals no doubt took into account the fact that the remainderman was resisting the claim of the life tenant to cut timber for any purpose.

Decree accordingly.