**William BARBER, Plaintiff-Appellant,**

**v.**

**Morris WESTMORELAND, Leonard Westmoreland, Marjorie Davis, and all unknown heirs of Mary Barber, Deceased, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

April 25, 1980.

Certiorari Denied by Supreme Court June 23, 1980.

Weill, Ellis, Weems & Copeland, Chattanooga, for plaintiff-appellant.

Hall, Haynes, Lusk & Foster, Chattanooga, for defendants-appellees.

## OPINION

LEWIS, Judge.

In October, 1974, plaintiff filed a complaint to remove a cloud on title to lands he alleged he owned in Marion County, Tennessee. His complaint alleged that defendants Morris Westmoreland, Leonard Westmoreland, Marjorie Davis, and all unknown heirs of Mary Barber, deceased, claimed a one-half undivided remainder interest in certain lands which he owned in fee simple absolute under a deed from Mary Barber to her husband, plaintiff. Defendants answered and denied that plaintiff owned a fee simple absolute title to the land and alleged that he owned only a life estate with the remainder to Mary Barber and her heirs, who are defendants, and that their remainder interest is clouded by plaintiff's complaint. In their cross-complaint they asked for an accounting for waste allegedly committed by plaintiff and for the proceeds of a condemnation proceeding against a portion of the property involved in the case at bar. Plaintiff answered the cross-complaint and denied that defendants had any interest in the property or any of the proceeds thereof.

On May 10, 1977, the Chancellor rendered a Memorandum Opinion in which he found that plaintiff William Barber held only a life estate in the subject property and that defendants had the remainder interest as heirs of Mary Barber, deceased. At the close of an evidentiary hearing on May 16, 1979, the Chancellor reaffirmed his Memorandum Opinion and assessed plaintiff for waste. The proceeds of the condemnation proceeding were distributed between plaintiff and defendants.

The facts are as follows: Plaintiff occupies all of the real property known as the W. P. Westmoreland place in Marion County, Tennessee, on the south side of the Tennessee River and south of Old Rankins Ferry. The lands in question contain approximately 386 acres. Plaintiff acquired title to the property in the following manner:

An undivided one-half interest, which is not in dispute, was conveyed by warranty deed of September 28, 1929, from J. D. Lay to William Barbree (William Barbree being the same person as plaintiff William Barber) and wife Mary Barbree (Mary Barbree being the same person as plaintiff's deceased wife, Mary Barber). Ownership of this one-half undivided interest continued in plaintiff and his wife Mary Barber as tenants by the entireties until her death at which time title passed to plaintiff.

The other one-half interest, the subject of this lawsuit, was owned by Mary Barber and was conveyed by Mary Barbree (the same person as plaintiff's deceased wife, Mary Barber) to William Barbree, her husband (the same person as plaintiff) by deed dated September 2, 1931. The language in question in the deed is as follows:

For value received, I, Mary Barbree, have this day bargained and sold and do by this instrument transfer and convey unto William Barbree during his natural life and at his death to me or my heirs if I survive him, all my undivided interest in and to what is known as W. P. Westmoreland place located on south side of Tenn. River and south of Old Rankins Ferry and being the lands purchase by W. P. Westmoreland from C. C. Anderson and wife, Georgia Ann Anderson, and of record in Book TT pages 219 220 of the registers office of Marion County, Tennessee and containing 386 acres and to which reference is here made for a more particular description.

To have and to hold unto the said William Barbree his heirs and assigns forever. It being understood that the vendor herein reserves the rents and profits off said above described land during her nat-

ural life and during the life of the vendee and that should the vendor survive the vendee theis [*sic*] conveyance to become null and void and of no effect.

This Sep. 2nd, 1931.

/s/ Mary Barbree

This deed was drawn by Marshall Hall, a Justice of the Peace. Mary Barber died June 15, 1969, and left plaintiff, her husband, surviving.

A portion of the subject property was condemned in the Circuit Court for Marion County, Tennessee, and $8500 is on deposit there as proceeds of the condemnation proceeding. In 1976 William Barber also sold from the lands in dispute fill dirt for which he was paid the sum of $24,037.92. Plaintiff has never made any accounting for these sums to defendants or to any other persons.

Defendants, nieces and nephews of Mary Barber, claim a remainder interest in one-half of the land by virtue of the aforesaid deed. Plaintiff asserts that the deed operated to convey him an estate in fee simple subject to a divesting condition subsequent.

Plaintiff has appealed and asserts, first: "The Chancellor below erred in not finding that the deed from Mary Barber vested in William Barber a fee simple estate subject to a divesting condition subsequent." The question presented, therefore, is whether the deed operated to convey to plaintiff an estate in fee simple subject to a divesting condition subsequent or a life estate in the undivided one-half interest in lands formerly owned by plaintiff's deceased wife, Mary Barber.

■ There are several concepts which are common to construction of all deeds. First, the deed is to be construed to effect the intention of the grantor. *Thornton v. Thornton*, 39 Tenn.App. 225, 230, 282 S.W.2d 361, 363 (1955) (citations omitted). This intent is to be ascertained from a "consideration of the entire instrument, read in the light of the surrounding circumstances." *Id.* Technical words are to be construed as the grantor intended and not necessarily in their technical sense. *Hutchi-*

*son v. Board*, 194 Tenn. 223, 229, 250 S.W.2d 82, 84 (1952). In construing the deed the intention of the grantor will be determined without resort to technical rules of construction such as division of the deed into its formal parts with certain parts prevailing over others if at all possible. *Bennett v. Langham*, 214 Tenn. 674, 681, 383 S.W.2d 16, 19–20 (1963) (citations omitted). "[I]n the construction of deeds the intention of the grantor is ascertained by consideration of the entire instrument of conveyance . . . . ." *Lockett v. Thomas*, 179 Tenn. 240, 243, 165 S.W.2d 375, 376 (1942) (citation omitted). "In construing a deed, as in construing a will, the Court is primarily concerned in trying to ascertain the intention of the parties." *Collins v. Smithson*, 585 S.W.2d 598, 603 (Tenn.1979). "It has long been the preferred rule in this state, however, that all of the provisions of an instrument be considered together and that the intention of the grantor of a deed be ascertained from the entire document, not from separate parts thereof, if at all possible." *Id.* (citation omitted).

■ Clearly, the granting clause of the deed, "unto William Barbree during his natural life," gives plaintiff a life estate. The habendum uses the language, "[t]o have and to hold unto the said William Barbree his heirs and assigns forever." There seems to be an irreconcilable conflict between the granting clause and the habendum clause, and if these phrases were all of the language, there would be such a conflict. Here, however, plaintiff is granted a life estate with the remainder to the grantee (Mary Barbree) "or my heirs."

In *Quarles v. Arthur*, 33 Tenn.App. 291, 231 S.W.2d 589 (1950), "the granting clause of the deed . . . created a life estate in [the grantee] with the remainder to the heirs of her body living at the time of her death," and the habendum contained the language, " 'to the said [grantee] her and her heirs and assigns.' " *Id.* at 294, 231 S.W.2d at 590. Here upon the death of plaintiff the property was to revert to Mary Barber or her heirs, and in *Quarles* at grantee's death the property was to go to

the grantee's heirs. The Court in *Quarles* stated:

> [U]nder the primary rule of considering the instrument as a whole without regard to formalisms, there is no sufficient predicate for assuming any substantial conflict between the granting clause and the habendum and covenant. We think the vice of appellants' argument lies in their overlooking the grant of a remainder interest to the heirs of the body of the life tenant. When the vesting of that estate under the terms of the granting clause is considered, the effect of the habendum, under appellants' construction, is entirely to eliminate the fee title granted in remainder to the heirs. Why would the grantor so carefully carve out a life estate as indicated by the language "to her her life time" and grant the remainder in fee to the heirs of the body of the life tenant, as appellants concede, only to enlarge the life estate and eliminate, in the habendum, the grant of the fee to the remaindermen? *Id.* at 296–97, 231 S.W.2d at 591.

In *Bennett v. Langham, supra,* the Court said:

> Of all the technical words creating an estate, those creating a life estate are the most easily understood. Certainly they are more easily understood by a layman than the terms tenancy by the entirety, joint tenancy, fee-tail, etc. Therefore it is reasonable to assume that the import of the words life estate were [*sic*] understood by the grantor more so than the legal phrasing in the habendum and covenant clauses and the legal significance of the sentence following the description which, it is contended, creates a tenancy by the entirety. It is doubtful that the grantor ever heard of such an estate.
>
> The habendum and covenant clauses of the deed are in their regular form. It is also reasonable to assume that the drafter of the instrument did not know that there was any required variance from the printed form of the habendum and covenant clauses required for the granting of a life estate. 214 Tenn. at 682, 383 S.W.2d at 20.

That the language of the deed in the case at bar, drafted by Marshall Hall, a justice of the peace, is inartistic is conceded by all parties. No showing has been made that either the grantor or grantee, who were relatively young at the time the deed was drawn or Mr. Hall, who drew the deed, possessed any particular legal background or understanding. The creation of a life estate was certainly within the contemplation of, and understood more readily by, the parties than the legal significance of "heirs and assigns."

We are of the opinion that the construction placed on the deed by the Chancellor is logical and gives effect to all of the deed. The Chancellor's construction gives effect to the intention of the grantor to show that title passed to her heirs if she failed to survive plaintiff. Also, if the grantor had survived plaintiff, the fee is fully vested in her since plaintiff's life estate would have been at an end and she could have done with it as she pleased. The language, "It being understood that the vendor herein reserves the rents and profits off said above described land during her natural life and during the life of the vendee and that should the vendor survive the vendee theis [*sic*] conveyance to become null and void and of no effect," is given meaning. If the effect of the habendum was to grant a fee to plaintiff, this reservation would be inconsistent. The first issue raised by plaintiff is without merit.

Plaintiff also asserts: "The Chancellor erred in giving the defendants any interest in the proceeds from the sale of fill dirt from the subject property and proceeds from the condemnation of a portion of this property." This issue is rendered moot by our holding under the first issue raised by plaintiff.

Defendants contend: "The Chancellor erred in reducing the judgment granted the defendants for the waste of the plaintiff." Plaintiff sold from the lands in dispute fill dirt for which he was paid the sum of $24,037.92. The Chancellor found:

[T]he defendants were entitled to have and recover of the plaintiff the sum of Twelve Thousand Eighteen and 96/100 Dollars ($12,018.96), said sum representing a recovery for waste heretofore committed by William Barber in the sale of certain fill dirt from the real property which is the subject matter of this action which had not heretofore been accounted for.

The Chancellor further found that defendants were entitled to this sum less an amount indicating the value of the life estate of plaintiff. The Chancellor found that the life tenant had committed waste by the sale of fill dirt but was, nevertheless, entitled to a life estate in the waste.

■ "[O]nly that which does a lasting damage to the remainder, or depreciates its value, is waste." *Thompson v. Thompson,* 206 Tenn. 202, 214, 332 S.W.2d 221, 227 (1959) (citing *Owen v. Hyde,* 14 Tenn. 333, 339 (1834). "[I]t may be observed here that the term 'waste' has a very extensive meaning. Specifically, with regard to waste by a cotenant, the term includes the taking away of soil, the quarrying of rock, and the removal of structures or of fixtures attached thereto." 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 38 (1965) (footnotes omitted). The evidence here is that the removal of the fill dirt did substantial damage to the land. We are of the opinion that the Chancellor was incorrect in decreasing defendants' recovery for waste by the value of plaintiff's life estate. Plaintiff's life estate entitled him to those emoluments incident upon the life estate. Waste is not one of the emoluments of a life estate.

The judgment of the Chancellor holding that plaintiff took a life estate under the deed is affirmed. The judgment of the Chancellor holding that plaintiff was entitled to the value of the life estate in the waste is reversed. Costs are assessed to plaintiff. This cause is remanded to the Trial Court for collection of costs and entry of any further necessary orders.

SHRIVER, P. J., and DROWOTA, J., concur.