IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 16, 2005 Session

## CONNIE J. OTTINGER v. PATRICIA E. STOOKSBURY

Appeal from the Chancery Court for Knox County
No. 160833-2     Daryl R. Fansler, Chancellor

No. E2005-00381-COA-R3-CV - FILED FEBRUARY 7, 2006

Connie J. Ottinger ("Plaintiff") sued Patricia E. Stooksbury ("Defendant") seeking, among other things, to quiet title to a thirty foot easement. Defendant answered the complaint and filed a counter-claim asserting, in part, that her right to use the easement is exclusive and that Plaintiff has no right to use the easement. The case was tried without a jury and the Trial Court entered a final order holding, *inter alia*, that Defendant is permanently enjoined from interfering with Plaintiff's right to use the easement located on Plaintiff's property. Defendant appeals claiming that the Trial Court erred by considering parol evidence and by requiring Defendant to prove her case by clear evidence. Defendant also argues that the evidence preponderates against the Trial Court's finding that the original grantors did not intend to create an exclusive easement in favor of Defendant. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Charles W. Van Beke and Mark N. Foster, Knoxville, Tennessee for the Appellant, Patricia E. Stooksbury.

Arthur F. Knight, III, Knoxville, Tennessee for the Appellee, Connie J. Ottinger.

# OPINION

## Background

This case involves the right to use an easement, or right-of-way, on land currently owned by Plaintiff. The easement was created in 1963 when Oaty and Mary Shelton deeded a portion of their land to Charles and Mayme Stooksbury. The September 26, 1963 deed from the Sheltons to the Stooksburys states, in pertinent part:

> The first parties also grant a 30 foot right of way for ingress and egress adjoining and lying north of the north line of subject property extending from the west line of Norris Freeway west along the north line of subject property at the north west corner of subject property; said right-of-way to be for the second parties, their heirs and assigns of the first parties but by the first parties only so long as they are the owners of the adjoining property;…

The 1963 deed identifies the Sheltons as the first parties and the Stooksburys as the second parties.

Defendant is Charles and Mayme Stooksbury's daughter and is the current record owner of the parcel deeded to Charles and Mayme Stooksbury by the September 26, 1963 deed from the Sheltons. The easement at issue contains a driveway that leads to Defendant's house. Plaintiff is the current record owner of the parcel of land burdened with the easement. Plaintiff purchased her land from Wayne Shelton, Oaty and Mary Shelton's son.

In the spring of 2003, before Plaintiff moved to her property, Defendant began to erect a fence to prevent Plaintiff from using the easement. In March of 2004, Plaintiff sued Defendant seeking, in part, to quiet title to the easement. Defendant answered the complaint and filed a counter-claim asserting, in part, that her right to use the easement is exclusive and, therefore, Plaintiff has no right to use the easement even though it is located on Plaintiff's land. The case was tried without a jury in October of 2004.

At trial, Defendant explained that she began to construct her fence because "it's always been my assumption that it was our driveway with a right of way that the Sheltons were allowed to use. But it has always - - as long as I've known, it's been our driveway." Defendant testified that she doesn't want Plaintiff to use the driveway:

> because it's out in the country. They have a driveway that goes right to their garage. I have lived there where I live now off and on since I was ten, either there or on the other side of [Plaintiff]. It's very private back there. There's never been anybody use that driveway. And I guess I just don't want to have to look, as I back out of my carport, for traffic, because it's always been a private drive.

Defendant testified that she has lived on this property for approximately two years and also lived there when she was a child. Defendant explained that her father built the driveway within the easement. Defendant admitted that, over the years, Oaty Shelton used this driveway occasionally to get to his barn where he stored his lawnmower.

Plaintiff's husband, Dennis Kyle Ottinger, testified that although he and his wife have another driveway leading to their property, they want to use the easement "[t]o get access to the top of the hill. On the left side of the property, it's pretty steep around the back of it, and there's not really a good way to get in there except to go up the driveway [within the easement]." Mr. Ottinger testified that a motor vehicle cannot get up the back to the southwest corner of the property. He further testified that he tried taking a Bobcat up the hill, but slid off the hill. Mr. Ottinger testified that it would cost at least $150,000, not including labor if he constructed it himself, to build another way of access up to the southwest corner of the property. Mr. Ottinger testified that he and his wife have no problem with Defendant continuing to use the easement, they simply want to be able to use it too.

Hershel John Sharp testified that he was related to Oaty and Mary Shelton and that he assisted the Sheltons in caring for their property after they became disabled. Mr. Sharp also testified that he visited the Sheltons over the years and used the easement when he visited. In addition, Mr. Sharp testified that he had seen other visitors to the Sheltons use the easement over the years.

Wayne Shelton testified that his father, Oaty Shelton, always said he planned to build his wife a home up on the hill on the southwest corner of the property. Wayne Shelton stated: "When they bought this property back in 1958, Mother - - Dad's promise to Mom was that he was going to build her a new home at a later date upon that hill and we - - throughout as far as I can remember he always tried to maintain that promise, and Mother kept holding it over him. But, unfortunately, the events didn't go there."

Wayne Shelton testified that his father paid for half of a bridge that Paul and Mayme Stooksbury constructed within the easement. This bridge leads to the driveway in the easement. Wayne Shelton testified that his father complained about the cost of the bridge and stated "[h]is complaint at the time was that he only wanted access to get to his property to the top of the hill and up the valley there to the barn."

Wayne Shelton further testified that he used the easement to get to where he was allowed to park his car when he was a teenager and still living with his parents. He stated: "From about 1960 until 1995 Dad had exclusive use of the one-car garage there at the house, and no one was allowed to block him in.…So, therefore, the rest of us had to go and use the driveway [in the easement] that goes to the barn to park our vehicles." Wayne Shelton testified that there was a gravel driveway leading from the driveway in the easement to the Sheltons' barn. He further stated: "Anyone that was a regular visitor would usually get the lecture about using [the driveway in the

easement]. My dad's first cousin, who maintained the yard for them after they became unable to, he would always take his pickup truck and come in that way to perform the yard maintenance."

Wayne Shelton testified that after he moved out of his parents' house, he would visit his parents four or five times a year and would always use the driveway in the easement. He also stated that "in the failing years of Dad's health. At that point in time Dad would - - Dad used to go to the store two to three times a week. Of course, he was always in his car. And he would come up the southern driveway [in the easement], turn behind the house, unload the groceries and then park his car. So he was always coming in and out of that driveway numerous times per week." Wayne Shelton also testified that his father would use the driveway in the easement so he didn't have to negotiate some steps. In addition, Wayne Shelton testified that he and his parents had always paid taxes on the portion of land containing the easement. Wayne Shelton also testified that to create a road to the southwest corner of the property now owned by Plaintiff would be cost prohibitive.

After trial, the Trial Court entered its Final Order of Judgment on November 17, 2004, incorporating the Trial Court's memorandum opinion. The final judgment, *inter alia*, held that Defendant is permanently enjoined from interfering with Plaintiff's use of the easement, and dismissed Plaintiff's claims for wrongful interference of an easement and trespass and Defendant's counter-claim. In pertinent part, the Trial Court's memorandum opinion states:

> Defendant argues that there is a typographical error in the 1963 deed, Ex. 1. It is defendant's argument that if this typographical error is corrected then the exclusive right to use the easement vested in the defendant upon the sale of the original tract by the Sheltons to Ottinger.

> In its simplest form the Court believes the issue in this case to be whether the 1963 deed conveyed to defendant's predecessor in title an exclusive easement.

> \* \* \*

> The parties have cited no Tennessee case, and the Court has found none, dealing with the grant of an exclusive easement. However, plaintiff has cited the case of Latham v. Garner, 105 Idaho 854, 673 P.2d 1048 (1983), which dealt with the grant of an exclusive easement. Of course this Court is not bound by a decision of the Idaho courts but it nevertheless constitutes persuasive authority for this Court's consideration.

> \* \* \*

> When construing a deed the Court should determine the intention of the grantor. This intent is to be ascertained from a consideration of the entire instrument read in the light of the surrounding circumstances. Barber v. Westmoreland, 601 S.W.2d 712 (Tenn. App. 1980).

-4-

In reviewing the circumstances surrounding this transaction the Court notes that the property conveyed to the Stooksburys in 1963 was surveyed out of a larger tract the Sheltons had purchased in 1957. The testimony of Wayne Shelton, the son of Oaty and Mary Shelton, by deposition, established that in 1963, and for a period of time thereafter, it was Oaty Shelton's intent to build a house for his wife on a portion of his property comprising about two acres and situated in the southwest corner of the property.

The undisputed testimony at trial was that this section of the property is relatively flat and presently accessible only by the 30-foot right-of-way. The testimony was further undisputed that in order to gain access from any other portion of plaintiff's property she would have to construct a road, which would require a great deal of excavation at a cost estimated by plaintiff's husband, Dennis Ottinger, to be in the neighborhood of $150,000.00.

It is extremely interesting to note that in conveying property to the Stooksburys the Sheltons did not convey in fee this 30-foot right-of-way reserving an easement to themselves. One would presume that if the grantor only desired to preserve the right of ingress and egress during the time he held the retained parcel in fee then he would have conveyed the property comprising the right-of-way reserving an easement to himself during the time of his ownership. Counsel for defendant acknowledged as much in closing argument.

Additionally, if one intended to build a residence on a portion of the property accessible only by the right-of-way it would not seem practical, and in fact would seem to be impractical, to deny subsequent purchasers the right of ingress and egress to that residence without having to construct another road at considerable cost.

Without question the 1963 deed is ambiguous and borders on the nonsensical in its present form.…

\* \* \*

However, this is not an action to reform the deed and it is unnecessary for this Court to determine the precise intent of the parties when Ex. 1 was drafted. It is sufficient for this Court to determine whether Ex. 1 establishes a clear intent by the grantor to eventually deprive his successors in title the use of the servient estate. The Court is of the opinion that Ex. 1 fails to do so.

Defendant filed a motion to alter or amend the judgment, which the Trial Court denied by order entered January 14, 2005. Defendant appeals to this Court.

**Discussion**

Although not stated exactly as such, Defendant raises three issues on appeal: 1) whether the Trial Court erred in considering parol evidence; 2) whether the Trial Court erred in requiring Defendant to prove her case by clear evidence; and, 3) whether the evidence preponderates against the Trial Court's finding that the original grantors did not intend to create an exclusive easement in favor of Defendant. Plaintiff raises additional issues which we restate as: If the Trial Court erred in enjoining Defendant from interfering with Plaintiff's use of the easement for the grounds relied on by the Trial Court, 1) whether Plaintiff has an easement by prescription; and, 2) whether Plaintiff has an easement by necessity.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first consider whether the Trial Court erred in considering parol evidence. To begin, we note that there is no question that an ambiguity exists in the deed. Defendant, however, argues, in part, that "[a] court may not consider parol evidence that adds to, varies, or otherwise contradicts the language of a deed unless there is a latent ambiguity," and, Defendant argues, the deed contains a patent, not latent, ambiguity. However, there is no need for us to determine whether the ambiguity in the deed is patent or latent as Defendant raised no objection to the introduction of this evidence at trial.

As this Court stated in *Grandstaff v. Hawks*,

> Objections to the introduction of evidence must be timely and specific.
>
> * * *
>
> A party who invites or waives error, or who fails to take reasonable steps to cure an error, is not entitled to relief on appeal. Failure to object [to] evidence in a timely and specific fashion precludes taking issue on appeal with the admission of the evidence.

*Grandstaff v. Hawks*, 36 S.W.3d 482, 488 (Tenn. Ct. App. 2000) (citations omitted).

Defendant did not object to the introduction of this evidence at trial, and, as such, is not entitled to raise this as an issue on appeal. We find this issue to be without merit.

We next consider whether the Trial Court erred in requiring Defendant to prove her case by clear evidence. Defendant argues, in part, that the Trial Court "relied heavily on the Idaho

Supreme Court's decision in *Latham v. Garner,*" 673 P.2d 1048 (Idaho 1983), and because of this, required Defendant to meet a "heightened burden of proof" based upon the *Latham* Court's recognition of cases from other states that discuss that an intention to create an easement excluding all rights of the grantor cannot be imputed in the absence of a clear indication of such intent. Defendant, however, has misread the Trial Court's memorandum opinion.

The Trial Court stated:

Defendant argues that there is a typographical error in the 1963 deed, Ex. 1. It is defendant's argument that if this typographical error is corrected then the exclusive right to use the easement vested in the defendant upon the sale of the original tract by the Sheltons to Ottinger.

In its simplest form the Court believes the issue in this case to be whether the 1963 deed conveyed to defendant's predecessor in title an exclusive easement.

\* \* \*

The parties have cited no Tennessee case, and the Court has found none, dealing with the grant of an exclusive easement. However, plaintiff has cited the case of Latham v. Garner, 105 Idaho 854, 673 P.2d 1048 (1983), which dealt with the grant of an exclusive easement. Of course this Court is not bound by a decision of the Idaho courts but it nevertheless constitutes persuasive authority for this Court's consideration.

\* \* \*

When construing a deed the Court should determine the intention of the grantor. This intent is to be ascertained from a consideration of the entire instrument read in the light of the surrounding circumstances. Barber v. Westmoreland, 601 S.W.2d 712 (Tenn. App. 1980).

\* \* \*

However, this is not an action to reform the deed and it is unnecessary for this Court to determine the precise intent of the parties when Ex. 1 was drafted. It is sufficient for this Court to determine whether Ex. 1 establishes a clear intent by the grantor to eventually deprive his successors in title the use of the servient estate. The Court is of the opinion that Ex. 1 fails to do so.

The Trial Court correctly recognized that it was not bound by *Latham v. Garner*, but in the absence of Tennessee case law directly on point, could consider *Latham* as persuasive authority. The Trial Court also correctly recognized that the dispositive issue in this case was

-7-

whether the 1963 deed conveyed an exclusive easement that would give Defendant the right to exclude Plaintiff's use of the easement even though the easement is located on land now owned by Plaintiff. The Trial Court correctly stated that under Tennessee law, when construing a deed, a court should determine the intention of the grantor by considering the deed read in light of the surrounding circumstances. Given the issue at hand, the Trial Court then applied the law to determine if it was the intention of the grantor to create an easement that would deprive the grantor's successors in title the use of the easement. The Trial Court did not hold Defendant to a "heightened burden of proof" to prove that the easement was exclusive to Defendant only. Additionally and as discussed below, our review of the evidence shows that whether a clear evidence standard or preponderance of the evidence standard was required of Defendant, Defendant did not meet her burden based upon the evidence presented to the Trial Court as contained in the record before us. We find this issue to be without merit.

Finally, we consider whether the evidence preponderates against the Trial Court's finding that the original grantors did not intend to create an exclusive easement in favor of Defendant. As our Supreme Court recently explained in *Griffis v. Davidson County Metro. Gov't*:

> In construing a deed, our primary task is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances. *Collins v. Smithson*, 585 S.W.2d 598, 603 (Tenn. 1979); *Bennett v. Langham*, 214 Tenn. 674, 383 S.W.2d 16, 18 (1964). Interpretation of a deed is a question of law. *Rodgers v. Burnett*, 108 Tenn. 173, 65 S.W. 408, 411 (1901); *Mitchell v. Chance*, 149 S.W.3d 40, 45 (Tenn. Ct. App. 2004).

*Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 274 (Tenn. 2005).

In the 1991 case of *Lowe v. Gulf Coast Dev., Inc.*, this Court noted:

> If an easement is exclusive, the owner of the servient estate loses its right to use the easement along with the easement holder. *Bijou Irr. Dist. v. Empire Club*, 804 P.2d 175, 183 (Colo. 1991); *Stephens v. Dobbins*, 511 So. 2d 652, 653 (Fla. Dist. Ct. App. 1987); *Latham v. Garner*, 105 Idaho 854, 673 P.2d 1048, 1050-51 (1983); *Restatement (First) of Property* § 493 comm. c (1944). Exclusivity will generally not be implied unless it is necessary for the use of the easement. *Capitol Rod & Gun Club v. Lower Colorado River Auth.*, 622 S.W.2d 887, 893-94 (Tex. Civ. App. 1981).

*Lowe v. Gulf Coast Dev., Inc.*, No. 01-A-01-9010-CH-00374, 1991 Tenn. App. LEXIS 860, at *28 (Tenn. Ct. App. Nov. 1, 1991), *no appl. perm. appeal filed*.

The evidence of the surrounding circumstances shows that at the time the easement was created, Oaty Shelton planned to build a new house for his wife on the hill on the southwest corner of the Sheltons' property and that the only reasonable access to that portion of this property

was, and still is, over the 30-foot easement. The evidence further shows that it would cost a significant amount of money to construct another access road to this southwest corner of Plaintiff's property. Plaintiff's husband estimated that it would cost at least $150,000 if he constructed it himself, and Wayne Shelton testified that it would be cost prohibitive to construct such a road.

Both Wayne Shelton and Mr. Sharp testified that over the years the Sheltons and their visitors regularly used the driveway in the easement. Wayne Shelton testified that his father paid for half of a bridge constructed by the Stooksburys within the easement and complained at the time because "he only wanted access to get to his property to the top of the hill and up the valley there to the barn." Wayne Shelton testified that there was a gravel driveway leading from the driveway in the easement to the Sheltons' barn. Defendant admitted that Oaty Shelton had used the easement to get to his barn where he stored his lawnmower. In addition, Wayne Shelton testified that he and his parents had always paid taxes on the portion of land containing the easement.

We cannot imply exclusivity in the easement as it is not necessary for Defendant's use of the easement for Defendant to have the sole right to use the easement. Plaintiff's use of the easement will not interfere with Defendant's use. Even if we construe the easement as strongly as possible against the grantor, as Defendant argues we should, the evidence preponderates in favor of the Trial Court's finding that when they created the easement, Oaty and Mary Shelton never intended to deprive themselves or their successors in interest of the right to use the easement. Further, we note that it is undisputed that Defendant had the burden to prove that the easement was exclusive. We find no error with the Trial Court's decision that Defendant failed to meet her burden.

Our resolution of Defendant's issues pretermits the necessity of considering the issues raised by Plaintiff. We affirm the Trial Court's Final Order of Judgment entered on November 17, 2004.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Patricia E. Stooksbury, and her surety.

_____
D. MICHAEL SWINEY, JUDGE

-9-