IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 14, 2005 Session

## JEAN E. HOOD v. J. DANIEL FREEMON, ET AL.

Appeal from the Chancery Court for Lawrence County
No. 11984-04     Robert L. Holloway, Chancellor

No. M2004-01889-COA-R3-CV - Filed on January 3, 2007

The owner of a tract of undeveloped commercial property in the city of Lawrenceburg asked the trial court to enjoin the lessees of that property from subletting it to the city for the purpose of building a retention pond. She claimed that such a use would constitute waste or create a permanent and private nuisance on the land. The trial court declined to issue the injunction and certified its decision as final for purposes of appeal. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

H. Anthony Duncan, Franklin, Tennessee, for the appellant, Jean E. Hood.

J. Daniel Freemon, Lawrenceburg, Tennessee, Pro Se for the appellees, J. Daniel Freemon and Ron Mayes.

## OPINION

### I. A LEASE OF LONG DURATION

The property that is the subject of this dispute is part of a larger tract of 5.8 acres fronting on North Locust Street in Lawrenceburg, which was owned by Viola Ellingson White and her daughter, Jean Ellingson Hood. On March 22, 1972, Ms. White and Ms. Hood leased the entire 5.8 acre tract to Howard J. Freemon. The duration of the lease was ten years, with possible renewals at the end of each term at the sole option of the lessee or his heirs and assignees, "for a total period not to exceed ninety-nine (99) years." The lessee was to pay a  monthly rental of $300 and all taxes assessed against the property. The rent was to increase to $500 after twenty years. Given the modest rent, the limited increase in rent, the lease duration, and the fact that Mr. Freemon had the sole option

to extend, the lease was favorable to the lessee. Only in the event of condemnation are the terms favorable to the lessors. Specifically, the lease provides as follows:

> In the event that the state, county, or city wish to exercise their right of eminent domain and condemn any of the herein leased property, it is specifically contracted and agreed that the payment for this land will be made to the Lessors. However, any damages to the property because of the business or improvements located thereon shall be paid to the Lessee, Howard Freemon, or his heirs and assigns.

Therefore, if the property were condemned, the landowner would receive the proceeds and the lessee would be compensated only to the extent the improvements were damaged by the taking.

Mr. Freemon was able to make good use of the part of the property that fronted on the road. He constructed buildings for a Taco Bell, a car wash, and a used car lot, and the owners of those businesses signed subleasing agreements which generated between $4,000 and $5,000 per month for Mr. Freemon. The portion of the property behind the businesses was not sublet. It consists of 4.13 acres of undeveloped land which is the subject of this dispute. This back 4.13 acre tract is characterized as low and swampy, but is not in a flood zone.

Ms. White passed away in 1989, and Ms. Hood became the sole owner and lessor of the property. Howard Freemon also passed away before the current dispute arose. His interest in the property as lessee passed to his five sons. One of the sons, Daniel Freemon, is the attorney for the lessees, and he also acts as a managing partner on behalf of his brothers.[1]

## II. A FLOOD CONTROL PROJECT

The City of Lawrenceburg has suffered from serious flooding in recent years, and the city authorities decided that a flood control project was essential. After a study by the Corps of Engineers, they purchased property in one area of the city upon which they constructed two large storm water retention ponds. Another phase of their project involved construction of a retention pond in the vicinity of Ms. Hood's property. The city purchased a tract that adjoined her property and commissioned a design for a seven acre pond that would encompass the city's newly-acquired property and the 4.13 acres in dispute.

In order to include Ms. Hood's property as part of the retention pond, three to four feet of dirt must be excavated from the surface of the 4.13 acre tract and removed to another site so the parcel would flood. The city manager testified that the retention pond is intended to be permanent.

---

[1] Daniel Freemon's brothers were not named as defendants, but an injunction would presumably bind them. Mr. Freemon also represents the interests of Ronald Mayes, a defendant who apparently holds a 50% stake in the lease.

The city initially began discussions with Mr. Freemon about acquiring the property. When they realized that he held a lease that would expire in the year 2070 at the latest, they decided they needed to communicate with the property owner as well. On November 26, 2003, Joe Baxter, the city's flood control manager, sent an offer of just compensation in a letter to Ms. Hood, which proposed that the city purchase the 4.13 acres for its fair market value, which an appraiser had found to be $153,000.

The letter offered to disburse the proceeds in accordance with the appraiser's opinion of the value of the Freemon leasehold interest and Ms. Hood's reversionary interest. The terms offered would have netted the lessee $129,000, while Ms. Hood would have received $24,000. Ms. Hood rejected the city's offer, presumably because under the lease she would receive the entire proceeds from a condemnation since the frontage with the improvements was not implicated.

After some subsequent unsuccessful negotiation attempts with Ms. Hood, Mr. Freemon then proposed that he sublet the property directly to the city, thereby eliminating any need for Ms. Hood's participation. Mr. Freemon proposed that the city pay $500 per month in rent and assume the tax payments on the 4.13 acres. The testimony at trial indicated that Mr. Freemon and the city anticipated that the sublease agreement would require the city to pay the $500 monthly rent directly to Ms. Hood, thereby relieving Mr. Freemon of his financial obligations to her and eliminating any risk to the city arising from non-payment of the underlying master lease.

### III. PROCEEDINGS IN THE TRIAL COURT

Jean Hood was determined to prevent the consummation of a deal she believed damaged her land from which she would derive no benefit. She filed a complaint in the Lawrence County Chancery Court asking the court for a temporary restraining order (T.R.O.), a permanent injunction, a finding that Mr. Freemon's actions breached the lease, and any other relief to which she is entitled. She argued among other things that the proposed arrangement between the city and Mr. Freemon to sublease the property to build the planned retention pond involved impermissible waste to her reversion interest.[2] Ms. Hood asked the court to enjoin the lessees from negotiating with the city for a sublease and/or from committing waste on her property. She also filed a lien *lis pendens* with the Lawrence County Register of Deeds.

Mr. Freemon filed an Answer and Counterclaim. He denied that the lessees' actions constituted waste, but asserted that if they did, Ms. Hood had an adequate remedy at law. He also asked the court for a mandatory injunction to remove the lien *lis pendens* from the property.

The court granted the T.R.O., but required Ms. Hood to pay a bond of $150,000 into the court. Counsel for Ms. Hood moved the trial court to reduce the amount of the bond. After the trial court denied the motion, counsel then moved the court not to grant the T.R.O., but to set a hearing

---

[2]Ms. Hood also claimed Mr. Freemon's actions amounted to breach of the lease. In its order, the trial court specifically reserved that issue, and it is not the subject of this appeal.

date for an injunction as soon as possible. The hearing was conducted on July 9, 2004. The court heard testimony by Ms. Hood and Mr. Freemon, as well as by Alan Betz, the Lawrenceburg City Attorney, and Joseph Baxter, the city's director of Emergency Management planning.

Mr. Baxter testified that in order to build the retention pond, three or four feet of soil would have to be removed from the property and stored off-site. He was asked if it could be considered waste if the city eventually decided it no longer needed the pond, and restored the soil it had removed. Mr. Baxter noted that he might use the soil for a levee project elsewhere in the city. He further testified that the city had applied for a grant to build the retention pond, which was expected to cost about $250,000. The grant application stated that the expected life expectancy of the pond was 100 years, but Mr. Baxter testified that the city intended the pond to be permanent.

Ms. Hood's attorney noted that Mr. Freemon's rights under the lease would expire in less than 70 years. He asked attorney Betz what the city would do after the termination or expiration of the lease if it entered into the proposed sublease. Mr. Betz testified that if necessary, the city could use its power of eminent domain to acquire property to build the retention pond.

At the conclusion of the proof, the trial court announced that it was going to deny the injunction. The order declared that there was no basis for the granting of injunctive relief, that the proposed action of the defendants did not constitute waste, nuisance, or a taking of private property for public use without just compensation,[3] and that Ms. Hood has adequate remedies at law for her alleged injuries. The court did not rule on other issues such as whether defendant's actions constituted a breach of the lease or whether the *lis pendens* lien should be lifted, but found that there was no just reason to delay an appeal, and certified its order as final pursuant to Tenn. R. Civ. P. 54.02.

## IV. ANALYSIS

The lease clearly provides that Ms. Hood is entitled to all the proceeds of a condemnation.[4] Under the proposed arrangement, Mr. Freemon receives the rent from the city. The city, on the other hand, avoids going through the condemnation process and gets use of the property. There was also testimony that the city would rather pay for the property's use over time than as a lump sum. Under the lease, however, Mr. Freemon can sublease the property to the city. The question is whether the proposed use by the city violates Ms. Hood's rights in the property as the fee holder such that it cannot occur without her permission.

Ms. Hood filed suit alleging that allowing the city to build a retention pond on the leased parcel constitutes a waste entitling her to relief. The trial court denied relief since it found the

---

[3]The city was not a party to this suit, so the question of whether the city's proposed actions constituted condemnation or inverse condemnation is not currently at issue.

[4]The 4.13 acre tract has no buildings or improvements on it so under the lease terms, Mr. Freemon would receive no condemnation proceeds. The defendants admitted this in their answer.

proposed actions by Mr. Freemon did not constitute waste.  This court had occasion in *Doramus v. Rogers Group, Inc.*, No. M1998-00918-COA-R3-CV, 2001 WL 196974 (Feb. 28, 2001) (perm. app. denied Sept. 10, 2001), to discuss at length the concept of waste.

> The Tennessee Supreme Court has defined waste as "an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in its substantial injury." *Chapman Drug Co. v. Chapman*, 207 Tenn. 502, 510, 341 S.W.2d 392, 396 (1960) (quoting *Thayer v. Shorey*, 287 Mass. 76, 191 N.E. 435, 437, 94 A.L.R. 307).  Lasting damage to the remainder or depreciation in its value is a requirement of waste in Tennessee. *Thompson v. Thompson,*. 206 Tenn. 202, 214, 332 S.W.2d 221, 227 (1960); *Barber v. Westmoreland*, 601 S.W.2d 712, 716 (Tenn. Ct. App. 1980).

> Essentially, waste is a violation by the lawful current possessor of the obligation to preserve the value of the land for those with subsequent or remainder interests, *see* 1 Restatement of the Law of Property § 138 at 450 (1936), so that "the estate may revert to those having an underlying interest, undeteriorated [by] any willful or negligent act."  93 C.J.S. *Waste* § 1 at 560 (1956).

> . . .

> Actions by the current holder which may constitute waste include changes to the property, changes in use of the land, and changes in the character of the land, but only where the owners of subsequent interests have reasonable grounds for objection to the changes, where the change results in permanent injury to the inheritance, or is contrary to good husbandry. *See* Restatement of the Law of Property § 140; 93 C.J.S. *Waste* § 6; 8 Thompson § 70.08(c)(3).  In Tennessee, a change in the land which successive interest holders find merely objectionable would not be considered waste unless that change results in lasting damage to the remainder or depreciation in its value. *Barber*, 601 S.W.2d at 716.

> . . .

> Obviously, an injunction to prevent waste is designed to protect the interest of the holder of the remainder or reversion in land so that it is not devalued by the current possessor.  Waste is actionable only where the action of the present holder results in lasting damage to the remainder or depreciation in its value. *Thompson*, 332 S.W.2d at 227 ("only that which does a lasting damage to the remainder, or depreciates its value, is waste"); *Barber*, 601 S.W.2d at 716; *Priest v. Priest*, 621 S.W.2d 577, 578 (Tenn. Ct. App. 1981) ("A remainderman unquestionably is entitled to relief from threatened waste which impinges upon or impairs his remainder interest").  Thus, a party seeking to enjoin a particular use of land as waste must have a sufficient stake in the value of the ownership interest to warrant judicial interference to protect that

value.  While that interest might be a future interest or might be contingent, it must be an ownership interest.

2001 WL 196974 at *10.

As the lessor under the lease, Ms. Hood retains an ownership interest in the leased parcel. "A lease transfers the owner's present possessory rights but does not make the tenant an owner of the property.  Ownership remains in the [lessor], whose present possessory interest in the property is transformed into a future interest estate, a reversion, at the moment the leasehold estate in the property." 4 THOMPSON ON REAL PROPERTY § 39.04 at 496-97 (Thomas ed. 1994).  Clearly, Ms. Hood has an ownership interest of sufficient value to warrant judicial interference to protect that value.

In order to constitute waste, the lessee's actions must result in "lasting damage to the remainder" or "depreciation in its value." *Barber*, 601 S.W.2d at 716.  The leased parcel totals 5.8 acres, is not in a flood zone, has road frontage, and is in a commercial area.  Mr. Freemon intends to take 4.13 acres of this parcel, or 80% of the leased premises, excavate three to four feet of dirt off the surface and make it part of a 7 acre permanent flood retention pond.  The city will then use the excavated dirt elsewhere.

We believe it is axiomatic that such an action will both damage the remainder and diminish the value of the parcel.  Turning the land into a pond certainly changes both the character and use of the land.  Excavating and removing enough soil to create the pond is also waste. *See Doramus*, 2001 WL 196974, at *10 n. 19.  Furthermore, Ms. Hood testified as to the diminished value of the property.  The owner of property may provide the court with her opinion about her property's value without being qualified as an expert. *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 234 (Tenn. Ct. App. 1976).  Since the proposed sublease by Mr. Freemon to the city both depreciates its value and damages Ms. Hood's remainder interest, we hold that the proposed use of the land constitutes waste.

For the foregoing reasons we reverse the trial court's holding and find that Mr. Freemon's proposed actions constitute waste and remand to the trial court for further proceedings not inconsistent with this opinion, including but not limited to whether Ms. Hood has an adequate remedy at law and whether the proposed action constitutes breach of the lease.

Costs of this appeal are assessed against the appellees, Daniel Freemon and Ron Mayes for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE